UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE "GEO" LEE,

    Plaintiff,

v.

EUSA PHARMA US LLC

Defendants.

Case No: 2:22-CV-11145

Hon. Paul D. Borman
Mag. Judge Anthony Patti

---

Nicholas Roumel (P37056)
Amanda M. Ghannam (P83065)
NACHT & ROUMEL, P.C.
**Attorneys for Plaintiff**
501 Avis Dr., Ste. 3
Ann Arbor, MI 48108
(734) 663-7550
nroumel@nachtlaw.com
aghannam@nachtlaw.com

Emily M. Petroski (P63336)
Benjamin D. Wu (P85635)
JACKSON LEWIS P.C.
**Attorney for Defendant**
2000 Town Center, Suite 1650
Southfield, MI  48075
(248) 936-1900
emily.petroski@jacksonlewis.com
Benjamin.wu@jacksonlewis.com

---

# PLAINTIFF'S MOTION TO COMPEL DISCOVERY and CERTIFICATION OF ATTEMPT TO CONFER

    Plaintiff moves to compel discovery from Defendant as set forth in the attached brief.

                    Respectfully submitted,
                    NACHT & ROUMEL, P.C.

                    */s/ Nicholas Roumel*

November 10, 2023              Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO FRCP 37 (a) (1) and LR 7.1

I certify that I have in good faith conferred or attempted to confer with the defendant's counsel in an effort to obtain concurrence without court action.

Specifically, I wrote a letter alleging discovery deficiencies on June 13, 2023. The parties had a Zoom conference on July 12, 2023 in an attempt to resolve mutual issues. The parties spoke about the discovery deficiencies on September 28, and counsel emailed Defendant's counsel on October 23 about same.

On November 8, undersigned counsel sought concurrence in an anticipated motion to compel, and suggested a call on the afternoon of November 10, the date discovery motions are due. There was no response.

Accordingly, I certify that concurrence was not obtained, with conferences held, and attempts to hold additional conferences, occurring as set forth above.

So certified.

Respectfully submitted,<br>
NACHT & ROUMEL, P.C.<br>
<br>
*/s/ Nicholas Roumel*<br>
Attorneys for Plaintiff

November 10, 2023

## BRIEF IN SUPPORT OF MOTION TO COMPEL

In this case, Plaintiff Geo Lee has filed a claim of race discrimination and retaliation for his internal claim of discrimination. In response, Defendant has generally argued that Plaintiff's performance justified his termination.

Plaintiff served discovery on Defendant on February 13, 2023 Defendant responded on May 15, 2023. Despite the amount of time to respond, Defendant objected to ten of the twelve interrogatories, and 33 of the 36 requests for production. [Interrogatories and responses, Exh A; production requests and responses, Exh B] Defendant also marked every single one of the 344 pages you produced as "confidential, subject to protective order" and made numerous unexplained redactions within those documents.

Defendant provided little relevant information that Plaintiff did not already possess, and despite Plaintiff's discrimination claims, barred inquiry into comparable employees' personnel records; their sales performance; or other internal complaints of discrimination. Despite Plaintiff's retaliation claims, Defendant has refused to provide a single document regarding their own internal investigation into Mr. Lee's complaint of discrimination, other than those previously shared with Mr. Lee before he was terminated.

Despite Plaintiff's "deficiency letter" of June 12, 2023, and numerous communications since, Defendant has not provided any additional responses.

## GENERAL DEFICIENCIES

Defendant made multiple objections on the basis that a particular request was not relevant, overly broad, unduly burdensome, disproportionate, vague, ambiguous, or protected by the attorney-client privilege – too many to count. Courts decide what is responsive; not the parties. *See Info-Hold, Inc. v. Sound Mechandising, Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) ("a party who <u>reasonably</u> perceives a discovery request from the opposing party as too broad or too vague to comply with may object to the request and seek clarification from the opposing party and the district court.") See, e.g., *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017) ("A party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections"); *Vitamin Health, Inc. v. Hartford Casualty Ins. Co.*, E.D. Mich. No. 15-10071 (Oct. 2, 2015); *Alan J. Sussman & Associates, Inc. v. Formula Four Beverages Inc.*, E.D. Mich. No. 2:17-cv- 10986.

Objections to discovery must be specific and supported by an explanation of the basis for the objection. The District Court for the Eastern Division of Michigan recently held, "[c]ounsel should articulate particularized reasons that relate specifically to the nature of the evidence sought, its potential materiality and relevance to the claims at issue—or lack thereof—and explain precisely how and why, if the objection is vagueness, overbreadth, or burdensomeness, the request

suffers from such defects, and what harm answering the request would cause." *Michigan Automobile Insurance Placement Facility v. New Grace Rehabilitation Center, PPC*, E.D. Michigan No. 4:17-CV-11007-TGB-DRG (Jan. 29, 2019). Moreover, "[s]uch a specific objection having been articulated, counsel must also state whether any responsive materials exist that are being withheld subject to that objection. Fed. R. Civ. P. 34(b)(2)(c)." *Id.*

Here, Defendant's counsel did not contact undersigned counsel to clarifying the discovery in question, or with an eye to mutually agreeing to narrow the scope of the questions, but instead forged ahead with responses that were mostly in the form of objections.

## SPECIFIC DEFICIENCIES WITH RESPECT TO ANSWERS TO PLAINTIFF'S INTERROGATORIES

**Interrogatory No. 8**

The interrogatory states:

*8. State whether the Company has ever\* (\*see definition #19) received an internal complaint of employment discrimination or retaliation. If your answer is in the affirmative, please state:*
*(a) The name, title, sex, sexual orientation, age, race, religion and national origin of each person who made such a complaint;*
*(b) The date of each complaint;*
*(c) A description of each complaint and the discrimination that was involved;*
*(d) A description of the investigation and procedures utilized;*
*(e) Identify who conducted the investigation, and whether they were employed by the Company or another entity;*
*(f) The current employment status of the person who made the complaint.*

**Defendant's Answer:** Defendant objected and was non-responsive:

>EUSA objects to this interrogatory, including all of its subparts, on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1), and on the grounds that it is not reasonably limited in time and scope because it seeks information from January 1, 2013 to the present. Plaintiff alleges that he was hired by EUSA on or around April 7, 2021. Plaintiff's Complaints allege race discrimination and retaliation arising out of his employment by EUSA, but does not include any sex, sexual orientation, age, religion, and national origin discrimination claims. Accordingly, this interrogatory is overbroad and seeks information that is irrelevant and disproportionate to this action under Fed. R. Civ. P. 26(b)(1).
>
>Subject to and without waiving the objections, and limiting EUSA's response to lawsuits and charges alleging retaliation for complaining of race discrimination or race discrimination in the last three years, EUSA states that only Plaintiff and Kevin Davis[1] have filed lawsuits, and that only Plaintiff has filed a Charge of Discrimination with the EEOC, which EUSA maintains was not timely filed.

**Argument:** Defendant did not respond to the question at all, which asked about *internal* complaints of discrimination. Their response discussed only EEOC complaints and lawsuits.

Evidence of "other acts", i.e., "evidence of discrimination by the employer against non-party employees" is crucial in employment discrimination cases. *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012). Importantly, the Supreme Court has instructed lower courts not to apply a per se rule excluding

---

[1] Davis was a co-worker who was fired the same day, under similar circumstances. He is also Black and has also filed a lawsuit, which pends in the State of New Jersey.

"other acts" testimony from non-parties alleging discrimination. *Sprint/United Mgmt. Co. v. Mendelsohn ("Sprint"),* 552 U.S. 379, 380–81, 387 (2008). "Whether such evidence is relevant is a case-by-case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" Id. at 388. A number of cases "demonstrate the continued viability of the proposition that evidence showing an employer has discriminated against other employees is generally admissible in the trial of the discrimination claim of a particular employee."

Citing *Griffin,* the Hon. Linda Parker held that similar acts evidence in a race discrimination case involving two Black female plaintiffs was not only discoverable, but admissible. *Gaines v. FCA* US LLC, 522 F. Supp. 3d 295 (E.D. Mich. 2021). Similarly, Magistrate David Grand mostly granted a motion to compel discovery seeking such similar acts evidence in an age discrimination case, *Rosenblatt v. NSF Int'l,* No. CV 21-10031, 2021 WL 5779946 (E.D. Mich. Sept. 7, 2021)

Other circuits follow suit. In *Kunzman v. Enron Corp.*, 941 F. Supp. 853, 863–64 (N.D. Iowa 1996) (citing, inter alia, Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 733 (8th Cir. 1996)). The Kunzman court, in rejecting the employer's proposition of a blanket exclusion of other acts evidence in a disparate treatment ADEA case, relied on clearly established precedent to rule that "because an

8

employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial" and that "an employer's background of discrimination is indeed relevant to proving a particular instance of discrimination." Id. at 863 (internal citations omitted).

"In discrimination cases, courts have generally allowed discovery of other actions or proceedings against a defendant because 'evidence of general patterns of discrimination by an employer is clearly relevant in an individual disparate treatment case, and is therefore discoverable pursuant to Fed. R. Civ. P. 26(b)(1).'" *Kelly v. FedEx Ground Package Sys.*, 2011 U.S. Dist. LEXIS 45180, *16 (S.D. W. Va. April 26, 2011)

**Interrogatory No. 9:** Here, Plaintiff sought information regarding the complaint of race discrimination Mr. Lee made, to Eric Hurel of HR.

> *9. Concerning the "formal letter of grievance" sent by Plaintiff to Eric Hurel, please state:*
> *(a) when it was transmitted to Mr. Hurel;*
> *(b) how it was transmitted;*
> *(c) identify all actions taken by Mr. Hurel after receipt;*
> *(d) identify all communications and documents relating in any way to Plaintiff's grievance;*
> *(e) identify the procedures utilized to investigate Plaintiff's grievance;*
> *(f) identify the outcome of Plaintiff's grievance;*
> *(g) state the date and manner that the outcome was transmitted to the Company;*
> *(h) identify whether the outcome was ever transmitted to Plaintiff, and if not, why not.*

9

**Defendant's answer:** EUSA objects to this interrogatory, including all of its subparts, to the extent it mischaracterizes the "Statement of Grievance" submitted by Plaintiff, seeks information relating to the investigation of Plaintiff's "Statement of Grievance" on the grounds that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Plaintiff concedes in his Complaints that EUSA hired outside counsel, and documents or information relating to outside counsel's investigation are subject to the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the objection, EUSA directs Plaintiff to the email sent by Plaintiff on February 24, 2022, produced herewith. EUSA further avers that after Plaintiff sent the February 24, 2022 email to Eric Hurel, Carter Clanton and DeWayne Wilcher, EUSA retained outside investigators, who interviewed Plaintiff.

**Argument:** The privilege objection is misplaced, and non-persuasive. A party resisting discovery based on a privilege has the burden of establishing that the privilege applies. *US Fire Insurance Company v. City of Warren*, E.D. Mich. No. 2:10-CV-13128 (Jun. 14, 2012) ("With respect to both the attorney-client privilege and the work product doctrine, the party resisting discovery bears the burden of demonstrating the applicability of the privilege.") Moreover, "'[w]ith respect to both the attorney-client privilege and the work product doctrine, the party resisting discovery bears the burden of demonstrating the applicability of the privilege.'" *Id.*, quoting *Meridian Mortgage Corp. v. Spivak*, E.D. Pa. No. 91-3932 (Aug. 14, 1992). The attorney-client privilege only applies when a client is seeking legal advice, and the work-product privilege only applies to documents prepared in anticipation of litigation.

10

"The attorney client privilege cannot be used as both a shield and a sword," and a party cannot claim it relied on counsel's advice without permitting the opposing party to explore the substance of that advice. *United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998).

Instructive here is a thorough opinion from Magistrate Patricia Morris in a Title VII employment discrimination action, *Martin v. Saginaw County Road Commission,* case No. 1:20-cv-12996 (June 7, 2022), brushing aside the employer's attorney-client privilege objections concerning an investigation conducted by outside counsel of the plaintiff's discrimination complaint. Magistrate Morris held this was a fact-intensive inquiry and cannot be decided unless and until it is determined that *the purpose of each act* was to obtain or provide legal advice.

> She accordingly held that interviews of witnesses were not protected: "After listening to the recorded interviews of [three named witnesses], I find that the interviews did not include any purpose of obtaining or providing legal advice, let alone any significant purpose in obtaining or providing legal advice. Although the interviews were conducted by an attorney, they were factual information gathering interviews involving questions and answers about work and working with Plaintiff. There was no discussion regarding the law, or how the facts may affect any potential legal claim, legal theories or legal consequences. I therefore find that these interviews are not protected by the attorney-client privilege and should be produced."

11

Even Defendant's counsel's own law firm (Jackson Lewis) has previously recognized that under these circumstances, they will be required to produce the documents from the internal investigation in discovery. In a link on their blog[2], the firm analyzed a federal court decision from Florida to provide the following guidance for employers, when handling harassment claims:

> Under the harassment mandates, an employer must investigate any complaint to determine what happened and what, if anything, it is required to do to remedy the situation. The U. S. District Court for the Middle District of Florida recently ruled that when an employer conducts an investigation and then relies on that investigation as an affirmative defense to liability, **the results of the investigation, as well as the investigator's notes and other related materials, are subject to the "discovery" process and may be requested by the plaintiff in the litigation.**
>
> The court recognized the difficult position that may result when producing the investigator's notes would reveal to the plaintiff, who may still be employed, the candid comments of co-workers who were assured their comments would be kept confidential. The court acknowledged the employer's attempt to honor its promise of confidentiality to employees interviewed during the investigation, but said such promises were futile and should not have been made. Production of confidential internal investigations is an "unfortunate by-product of litigation and cannot outweigh the plaintiff's entitlement to legitimate discovery. *Volpe v. US Airways*, 81 FEP Cases 169 (Fla. 1999). [Id., emphasis added]

---

[2] In his discovery deficiency letter to opposing counsel of June 12, 2023, Plaintiff's counsel cited to this article, at https://www.jacksonlewis.com/resources-publication/employers-may-have-reveal-specifics-internal-harassment-investigations-during-litigation. The page has since been removed and is no longer available. See attached snapshot of the page as it appeared on Jun 8, 2023 23:29:05 GMT. However, the same content may be found at casetext.com, citing with attribution to Jackson Lewis. See https://casetext.com/analysis/employers-may-have-to-reveal-specifics-of-internal-harassment-investigations-during-litigation.

Here, Defendant did indeed raise the affirmative defense that it took prompt and effective remedial action after Mr. Lee's complaint:

> 8. Plaintiff's allegations are barred in whole or in part because EUSA exercised reasonable care to prevent and promptly correct any alleged discriminatory/harassing behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by EUSA to avoid harm otherwise. [Answer and Affirmative Defenses, ECF 12, PgID 47, October 10, 2022]

Accordingly, Defendant cannot "have its cake and eat it too." In the landmark case of *Upjohn Co. v. United States*, 449 U.S. 383 (1981), the U.S. Supreme Court identified several factors that are relevant in determining whether the attorney-client privilege applies to investigations conducted by in-house counsel, including whether the communications were made at the direction of corporate superiors to secure legal advice, and whether the employees were aware that the communications were made in order to allow the corporation to obtain legal advice. In *Upjohn*, the Supreme Court placed significant weight on the fact that the dominant role of counsel was to give "legal advice" and that "the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice."

Here, in contrast, Mr. Lee was assured that the company was hiring "an outside investigator to investigate your concerns and we will be contacting you shortly when the investigator is on board." [Email from Eric Hurel, 2/25/22, Exh C]. A subsequent memo confirmed this was an "impartial investigator: "Recently,

EUSA Pharma (US) LLC ("EUSA" or the "Company") engaged an impartial investigator to conduct an investigation into the issues you raised." [Email from Arn Lindekugel, 3/8/23, Exh D]

This "impartial investigator" was, as it turned out, the firm of Jackson Lewis. [Memo from Arn Lindekugel, 3/21/23, Exh E] Two attorneys from its Boston office, Bert Ware and Patrice Dixon, interviewed Mr. Lee on April 8, 2022. Mr. Lee was permitted to be accompanied by his undersigned counsel. The interview was videotaped (and a copy was provided to Mr. Lee and his counsel). The investigators even asked afterwards for the names of Mr. Lee's witnesses [Exh F], which were provided.

However, Defendant has refused to provide any other documents relating to this investigation – no communications between the company and the investigators, no other witness names or statements, no findings – nothing.

Given the above, Defendant may not use the attorney-client privilege to hide this information. They should be compelled to provide it in discovery.

**Interrogatory No. 10**

> *10. For all of the Company's KAM's* [Key Account Managers] *employed by the company since January 1, 2013, **including Plaintiff**;*
>
> *(a) identify their name, race, color, gender, or national origin;*
> *(b) state their contact information, region or sales territory, and manager and director;*
> *(c) identify their duties, including product(s) sold;*

14

*(d) set forth their detailed sales records, rankings, and/or results for each period or quarter in which sales are measured;*

*(e) identify if any were placed on PIPs, and if so, the outcome of the PIP;*

*(f) identify any who were involuntarily terminated, and if so, the reason for the termination and the identity of the person(s) involved in the decision to terminate.*

**Defendant's answer:** EUSA objects to this interrogatory, including all of its subparts, on the grounds that it is vague, ambiguous, and/or does not reasonably identify the information sought; on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of this case, as required by Federal Rules of Civil Procedure 26(b)(1); and on the grounds that it is not reasonably limited in time and scope. Specifically, this request is overbroad, unduly burdensome, and seeks information that is irrelevant and disproportionate to this action in that Plaintiff seeks information relating to "name, race, color, gender, or national origin." Plaintiff's Complaints allege only race discrimination and retaliation.

Subject to and without waiving its objections, and limiting EUSA's response to Key Account Managers employed by EUSA from May of 2019 to May of 2022 who were placed on PIPs other than Plaintiff and Davis, EUSA states as follows: Christine Sweitzer; Caucasian; date of hire January 4, 2021, date of termination January 31, 2022. Responding further, EUSA refers to the documents related to Sweitzer produced herewith.

**Argument:** This answer is utterly non-responsive. Defendant named only one other KAM and otherwise objected. (In Bate Stamp 113, they did generally name other KAMs working under DeWayne Wilcher, but given their otherwise conscientious blacking out of all names throughout the document response, it is suspected that the failure to redact these names was unintentional.)

Plaintiff seeks to discover and develop circumstantial evidence of discrimination as required by the *McDonnell-Douglas* burden-shifting framework.

15

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). To meet this initial burden, Plaintiff must show "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).

It is well established that Plaintiff can satisfy the fourth element with evidence regarding other employees, both by a showing that she was treated differently than similarly-situated employees (*see, e.g., Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 608 (6th Cir. 2019)) and by exploring other instances of discrimination (*see, e.g., Cichewicz v. UNOVA Indus. Auto. Sys., Inc.*, 92 F. App'x 215, 220 (6th Cir. 2004) (in an age discrimination case, evidence regarding other older employees also terminated was sufficient to suggest a pattern of targeting only older individuals for discharge, which was all plaintiff needed to satisfy the fourth element of his prima facie case)).

Once Plaintiff establishes a prima facie case, Defendant must meet its burden of offering a legitimate, non-discriminatory reason for the termination. The burden will then shift back to Plaintiff to establish that Defendant's reason was a mere pretext for discrimination, requiring discovery regarding Defendant's true motive. A plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's

challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (internal citation omitted). The third type of showing ordinarily "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Without access to this crucial category of evidence, Plaintiff may be precluded from establishing a key element of his case. This evidence has the potential to determine the outcome of Plaintiff's lawsuit. *See, e.g., Madden v. Chattanooga City Wide Serv. Dep't,* 549 F.3d 666 (6th Cir. 2008) (finding that a reasonable factfinder could find that the employer's proffered reason was insufficient to motivate discharge where a Black plaintiff offered evidence that white employees were not fired or disciplined at all despite engaging in identical conduct to that for which he was fired)*; Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 F. App'x 452, 460 (6th Cir. 2006) (upholding dismissal of discrimination case where plaintiff failed to show that other employees engaged in substantially similar conduct but were not fired and thus failing to establish pretext). Defendant should not be permitted to simply withhold this entire category of evidence in the hopes of preventing Plaintiff from building a case.

In particular, given that Defendant has largely justified its termination of Mr. Lee based upon performance factors, Mr. Lee is entitled to compare his performance to all other KAMs, including those who were not terminated or placed on PIPs. Nor is the fact that Ms. Sweitzer a Caucasian woman necessarily dispositive because there may be many other comparators outside the protected class to show that Mr. Lee was treated less favorably. "A plaintiff satisfies the fourth prong where he or she demonstrates that a "comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992), as cited in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

See also *Parrish v. Ford Motor Co.,* 953 F.2d 1384 (6th Cir. 1992), where in an age discrimination case, the court reasoned: "[A]ccess to the personnel files of the eight individuals promoted during the limitations period, in order to discover at a minimum their ages and qualifications, is clearly necessary for Parrish to establish a prima facie case of discrimination within the limitations period."

Similarly, in *Kaczmarek v. Res-Care, Inc.,* No. 1:13 CV 1959, 2014 WL 3408576, at *4 (N.D. Ohio July 10, 2014), the court granted plaintiff's motion to compel the personnel files of three other individuals, whom Plaintiff claimed (a) received better training, and (b) were not, as opposed to the plaintiff, disciplined

18

for violating a certain policy. The court wrote, "The personnel files plaintiff is seeking relate to her claims. Consequently, the Court grants plaintiff's motion to compel."

## SPECIFIC DEFICIENCIES WITH RESPECT TO ANSWERS TO PLAINTIFF'S REQUEST FOR PRODUCTION

Defendant's document response generally conformed with, and suffered the same deficiencies, as the above. Defendant failed to produce documents or emails relating to Mr. Lee's complaint and the internal investigation, failed to produce documents relating other complaints of discrimination or retaliation; produced nothing for comparators (no personnel files, sales records); and produced very little documentation relating to Mr. Lee's termination.

Defendant did produce only two other categories of documents Plaintiff did not already have in his possession. The first were a handful of emails relating to Mr. Lee's termination. The second were lists of physicians (customers of Defendant) with their names blacked out (e.g. 68, 75, inter alia). Overall, Defendant's redaction pen was overly aggressive and unexplained, especially given that these physicians are potential witnesses, and that we have a protective order. Nonetheless, Defendant marked *nearly every single document* as subject to the protective order, and *every single document* with physicians' names blacked out as "Attorneys' Possession Only."

Plaintiff will provide the document production for *in camera* inspection as the court requires.

## PROTECTIVE ORDER CONCERNS

Our protective order permits Defendant to designate "private, confidential, or proprietary" information as "confidential," or in a party's apparent discretion, "'Attorneys' Possession Only', where appropriate." Here, Defendant painted with so broad a brush that even the closing verbiage of the last pages of emails was marked as "confidential" (e.g. Bate Stamps 51, 54), and a list of conferences as "Attorneys' Possession Only" (e.g., 111). Defendant even went so far as to designate Mr. Lee's PIP documents as "Attorneys' Possession Only" meaning he would have to physically visit his attorney's office to view them [Protective Order, ECF 33, ¶ 6], along with the myriad other documents directly relating to his job performance.

There is no apparent justification for these confidentiality decisions, and many of them hamper counsel's ability to prepare the case with Mr. Lee, who lives roughly an hour away from his attorney's office.

Pursuant to the stipulated protective order [ECF 33, PageID 470-471, 5/17/23, ¶ 8, a party may bring an appropriate motion to challenge the confidentiality designation of a document, after conferring with the other party, but failing to resolve the issue. Plaintiff accordingly challenges the entirety of the

"Attorneys' Possession Only" designations by the Defendant which were made with no apparent justification, and no explanation by the Defendant.

*W H E R E F O R E* Plaintiff requests this Honorable Court grant his motion to compel discovery, with costs, attorney fees, and any other sanction or relief that the Court may grant.

                                        Respectfully submitted,

                                        NACHT & ROUMEL, P.C.

                                        *s/Nicholas Roumel*

                                        Attorneys for Plaintiff
November 10, 2023                    Nicholas Roumel