UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE "GEO" LEE,

    Plaintiff,

v.

EUSA PHARMA US LLC,

    Defendant.

CASE NO. 22-cv-11145

HON. PAUL D. BORMAN

---

| | |
|---|---|
| Nicholas Roumel (P37056) | JACKSON LEWIS P.C. |
| Amanda M. Ghannan (P83065) | Emily M. Petroski (P63336) |
| NACHT & ROUMEL, P.C. | Benjamin D. Wu (P85635) |
| Attorneys for Plaintiff | Attorneys for EUSA Pharma US LLC |
| 101 N. Main St., Ste. 555 | 2000 Town Center, Suite 1650 |
| Ann Arbor MI 48104 | Southfield, MI  48075 |
| 734-663-7550 | (248) 936-1900 |
| nroumel@nachtlaw.com | emily.petroski@jacksonlewis.com |
| aghannan@nachtlaw.com | benjamin.wu@jacksonlewis.com |

---

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ............................................................. iii

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS .................................................................... 1

    A. Plaintiff is placed on a PIP, Terminated, and Files His Complaint Alleging Race Discrimination and Retaliation ......................................... 1

    B. Plaintiff's Discovery Requests to EUSA and EUSA's Responses .......... 3

    C. The Parties' Attempt to Resolve Discovery Disputes ............................ 4

III. LEGAL ARGUMENT ............................................................................ 5

    A. Interrogatory No. 8 and Any Purported Related Request for Documentation Seeks Information/Documentation That is Not Relevant or Proportional to the Needs of the Case .................................................. 5

    B. Interrogatory No. 9 and Any Purported Related Request for Production Seeks Information/Documentation Protected From Disclosure by the Attorney-Client Privilege and/or Work Product Doctrine ....................... 7

        1. The Investigation and Any Related Documents Were Prepared to Give EUSA Legal Advice and in Anticipation of a Potential Claim or Litigation ................................................................................. 8

        2. Attorneys' Investigation Notes Reveal Their Mental Processes ... 9

        3. The Investigation Documents are Not Necessary and Plaintiff Can Obtain Information He Seeks by Other Means ........................... 10

        4. Plaintiff Cites No Caselaw Holding That Attorney Investigative Notes Are Generally Discoverable ............................................. 11

    C. Interrogatory No. 10 is Not Proportional to the Needs of this Case and Seeks Non-Relevant Information ........................................................... 12

    D. EUSA's Redactions Protect its Confidential Business Records ............ 14

IV. CONCLUSION ...................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Conti v. Am. Axle & Mfg.*,
    326 F. App'x 900 (6th Cir. 2009) ........................................................................5

*Fausek v. White*,
    965 F.2d 126 (6th Cir. 1992) ...............................................................................7

*Isaac v. Shell Oil Co.*,
    83 F.R.D. 428 (E.D. Mich. Aug. 23, 1979) .........................................................6

*Martin v Saginaw County Road Commission*,
    606 F.Supp.3d 639 (E.D. Mich. 2002) ..............................................................11

*Murray v. City of Warren*,
    No. 19-13010, 2020 U.S. Dist. LEXIS 148006 (E.D. Mich. Aug.
    17, 2020) ..............................................................................................................6

*United States v. Workman*,
    138 F.3d 1261 (8th Cir. 1998) .....................................................................10, 11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)........................................................................................9, 10

*Van Hull v. Marriott Courtyard*,
    63 F. Supp. 2d 840 (N.D. Ohio 1999) ...............................................................10

**Statutes**

42 USC § 1981 ............................................................................................................1

Elliott-Larsen Civil Rights Act ..................................................................................1

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................*passim*

## STATEMENT OF ISSUES PRESENTED

I. Where Plaintiff's discovery requests seek information and documents that are not relevant or proportional to the needs of the case, should Defendant be compelled to produce that information/documentation?

   EUSA answers: No.

II. Where Plaintiff seeks documents that are protected from disclosure by the attorney-client privilege and/or work product doctrine, should Defendant be compelled to produce that information/documentation?

   EUSA answers: No

III. Were EUSA's redactions and designation of a limited number of documents as "Attorneys' Possession Only", consistent with the parties' Stipulated Protective Order, reasonable and appropriate?

   EUSA answers: Yes

## I.  INTRODUCTION

Contrary to Plaintiff's assertions, Defendant has complied in good faith with its discovery obligations pursuant to the Federal Rules of Civil Procedure. Counsel for the parties have met and conferred regarding discovery issues in this matter and have been unable to resolve them. Defendant has produced responsive documents that are relevant and proportional to the needs of the case. However, Plaintiff's Motion to Compel seeks production of documents which are outside of the scope of discovery, either because they are protected from disclosure by the attorney-client privilege and/or work product doctrine, or because they seek information and documents which are not relevant or proportional to the needs of the case. Accordingly, Defendant requests that this Court deny Plaintiff's Motion to Compel in its entirety.

## II.  STATEMENT OF FACTS

### A. Plaintiff is placed on a PIP, Terminated, and Files His Complaint Alleging Race Discrimination and Retaliation

Plaintiff was previously employed by EUSA as a Key Account Manager ("KAM"). (ECF No. 17, PageID.102). Plaintiff alleges that although his performance was comparable to other KAMs, he was placed on a PIP and ultimately terminated because of his race and in retaliation for submitting a "grievance". (*Id.*, PageID.102-107). Plaintiff further alleges that another Black KAM, Kevin Davis, was placed on a PIP and terminated despite also exceeding sales goals. (*Id.*,

PageID.104, 107). EUSA denies Plaintiff's allegations.

Indeed, contrary to Plaintiff's assertions, the decision to terminate Plaintiff was not based on his race or any grievance. Indeed, the decision to terminate Plaintiff's employment was made before he submitted his grievance, but was not effectuated until after EUSA completed its investigation into Plaintiff's grievance. Moreover, another KAM—a Caucasian woman—was also placed on a PIP.

On May 26, 2022, Plaintiff filed a Complaint against EUSA and Recordati Inc., alleging retaliation in violation of 42 USC § 1981 (Count I) and race discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA") (Count II). (ECF No. 1). On October 28, 2022, Plaintiff filed a First Amended Complaint against EUSA and Recordati Rare Diseases, Inc. wherein he added allegations that Recordati was his joint employer. (ECF No. 17). Recordati filed a Motion to Dismiss, arguing that the First Amended Complaint failed to plausibly allege that Recordati was Plaintiff's joint employer. (ECF No. 21). The Court granted Recordati's Motion to Dismiss and dismissed Recordati. (ECF No. 32). Thereafter, Plaintiff and EUSA filed their Joint Discovery Plan (ECF No. 34) and the Court issued its Scheduling Order, setting a deadline for completing fact discovery of December 22, 2023, and requiring discovery motions to be filed by November 10, 2023. (ECF No. 35).

## B. Plaintiff's Discovery Requests to EUSA and EUSA's Responses

On February 13, 2023, Plaintiff served his First Interrogatories and Requests for Production ("discovery requests") on EUSA in Microsoft Word format via email. On May 15, 2023, and pursuant to a mutual extension of deadlines to respond to discovery, EUSA served its discovery responses. (**Ex. A**, EUSA's Responses to Plaintiff's Discovery Requests). EUSA substantively responded to Plaintiff's discovery requests but indicated that, due to the confidential nature of some of the documents to be produced, production of responsive documents needed to be subject to a mutually-agreeable protective order. Accordingly, on May 17, 2023, the parties entered into a Stipulated Protective Order ("SPO"). (ECF No. 33). The SPO allows parties producing discovery material to designate the material as "Confidential" and "Attorneys' Possession Only" where appropriate. (ECF No. 33, PageID.468).

Upon entry of the SPO, EUSA also served responsive documents Bates-labeled EUSA (Lee) 000001-000344.[1] This initial set of documents included Plaintiff's personnel records, internal communications regarding the decision to place Plaintiff on a PIP, numerous documents relating to Plaintiff's sales accounts (including the names of customers), communications between Plaintiff and Carter Clanton and DeWayne Wilcher, and EUSA's policies. Moreover, internal

---

[1] EUSA later supplemented its document production with documents Bates-labeled EUSA (Lee) 000345-000619.

communications were produced indicating that EUSA had made the decision to terminate Plaintiff's employment prior to Plaintiff filing his "grievance" which he claims he was terminated in retaliation for.

Certain documents were marked "Confidential" pursuant to the SPO, and some documents—those containing information relating to confidential business records, such as business accounts and clients, as well as PIP documentation for another Key Account Manager who is not a party to this action—were marked "Attorneys' Possession Only". Plaintiff's own PIP documentation was not marked "Attorneys' Possession Only". (**Ex. B**, Plaintiff's PIP).

### C. The Parties' Attempt to Resolve Discovery Disputes

On June 12, 2023, Plaintiff's counsel sent EUSA's counsel a deficiency letter, arguing that certain of EUSA's objections and withholding of responsive documents were not legally sound. (**Ex. C**, 6/12/23 Letter). On June 30, EUSA's counsel responded to Plaintiff's counsel's deficiency letter to address Plaintiff's arguments, and indicated that EUSA was willing to meet and confer to discuss and potentially resolve any discovery disputes. Accordingly, counsel for the parties met on July 21, 2023 to confer regarding the outstanding discovery issues. (**Ex. D**, 6/30/23 Letter). However, the parties were unable to resolve the alleged deficiencies identified by Plaintiff's counsel in his June 12, 2023 deficiency letter. The parties exchanged additional correspondence regarding the alleged deficiencies, including a follow-up

letter from EUSA's counsel on October 17, 2023, Plaintiff's counsel's response on October 23, 2023, and a final letter from EUSA's counsel dated November 7, 2023.[2] (**Ex. E**, 10/17/23 and 11/7/23 Letters). Counsel for the parties have additionally communicated via email to attempt to resolve the outstanding discovery issues, but were unable to do so. The parties respective motions followed.

### III.  LEGAL ARGUMENT

Plaintiff's motion seeks information and documents that fall outside the scope of discovery under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Pursuant to Rule 26, a district court should balance a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 907 (6th Cir. 2009).

### A. Interrogatory No. 8 and Any Purported Related Request for Documentation Seeks Information/Documentation That is Not Relevant or Proportional to the Needs of the Case

Interrogatory No. 8 sought information regarding whether EUSA has ever received an internal complaint of any type of employment discrimination or

---

[2] On November 8, 2023, Plaintiff's counsel emailed EUSA counsel and requested another meet-and-confer to discuss outstanding discovery issues prior to the deadline for discovery motions. A response was prepared to Plaintiff's counsel's email, but was inadvertently not sent.

5

retaliation, without any geographic limitation for a period of more than ten years. (**Ex. A**). EUSA objected to the scope of this request (seeking information and documents from January 1, 2013 to present), but answered that no lawsuits or charges alleging race discrimination, or retaliation for complaining of race discrimination, have been filed against EUSA in the last three years. (*Id*). Plaintiff argues that this response is deficient because evidence of "other acts" is discoverable, and that EUSA did not provide information regarding internal complaints of race discrimination or retaliation.

While Plaintiff may be entitled to some discovery as to "other [alleged] acts," the time period and scope sought by Plaintiff in the Interrogatory is overbroad and unduly burdensome and not proportional to the needs of this case. Plaintiff seeks information spanning ten years relative to alleged "other acts" and types of discrimination not asserted in his Complaint, and for a time span which courts in the Sixth Circuit have held to be overbroad and disproportionate. *See, e.g., Murray v. City of Warren*, No. 19-13010, 2020 U.S. Dist. LEXIS 148006, at *5 (E.D. Mich. Aug. 17, 2020)[3] (discovery of 10 years' worth of complaints of discrimination is "extraordinarily burdensome"); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428 (E.D. Mich. Aug. 23, 1979) (granting a non-party's motion for protective order where the plaintiff's notice to produce encompassed documents spanning a ten year period).

---

[3] Unpublished cases attached as **Exhibit F**.

6

Thus, it is EUSA's position that its answer to Interrogatory No. 8 and any purported related request for production satisfies its discovery obligations under the Federal Rules of Civil Procedure.

**B. Interrogatory No. 9 and Any Purported Related Request for Production Seeks Information/Documentation Protected From Disclosure by the Attorney-Client Privilege and/or Work Product Doctrine**

Plaintiff seeks to compel discovery into the investigation conducted by EUSA's outside counsel regarding Plaintiff's "formal letter of grievance," including communications and documents relating to Plaintiff's grievance and the procedures utilized to investigate the grievance. The information sought, however, is protected from disclosure by the attorney-client privilege and/or work product doctrine.

The attorney-client privilege attaches (1) where legal counsel of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by his legal adviser, (8) except the protection be waived. *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) (citing *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964). Likewise, the work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), prohibits discovery into documents and materials prepared in anticipate of litigation or for trial, and prohibits discovery of the "mental impressions, conclusions,

7

opinions, or legal theories of an attorney or other representative of the party concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

### 1. The Investigation and Any Related Documents Were Prepared to Give EUSA Legal Advice and in Anticipation of a Potential Claim or Litigation

Here, EUSA retained outside counsel to investigate Plaintiff's grievance, in which he acknowledged that he had been placed on a PIP in November of 2021 for reasons including "gaps in attainment". In addition, Plaintiff's grievance did not dispute the decrease in accounts within the territory; the failure to visit an account for which he'd been provided information; the failure to generate leads; and the failure to gain credentialling for Henry Ford Hospital, effectively keeping him from interactions at that facility. Despite this, Plaintiff indicated in his Grievance that he found the PIP "puzzling…". In addition, Plaintiff claimed that "[s]ince Q4 of 2021, [his] work performance has been toxic". More specifically, Lee claimed that he "felt bullied, harassed and my job status repeatedly threatened." Lee also pointed out that he found it "interesting this is also happening to the only other African American KAM". Lee also claimed in his grievance that the fact that he had not received his Q4 quarterly incentive award was "unacceptable". Plaintiff ended his grievance by requesting "compensation for any and all monetary losses, including earned salary and bonus". In addition, Lee noted that he hoped "we can resolve this…," but made

8

clear that he was not "adverse to involving outside counsel." Notably absent from Plaintiff's grievance is any reference to any alleged discrimination.

Importantly, however, all steps taken to investigate Plaintiff's grievance was for the purpose of providing legal counsel to EUSA to ensure compliance with applicable laws. Any documents prepared by EUSA's outside counsel in the course of this investigation was likewise created in anticipation of a potential claim or litigation. Indeed, Plaintiff notes in the grievance that he was prepared to involve "outside counsel".

### 2. Attorneys' Investigation Notes Reveal Their Mental Processes

The United States Supreme Court has held that attorneys' notes and memoranda from conducting investigations and oral interviews can be covered by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981). The Court reasoned that such notes "tend to reveal the attorneys' mental processes" and that Fed. R. Civ. P. 26 "accords special protection to work product revealing the attorney's mental processes." *Id.* at 400. The Court held that in order to overcome the attorney-client privilege and justify discovery of an attorney's investigation notes, the party seeking the discovery must make a "showing of necessity and unavailability by other means." *Id.* at 402. The investigation documentation that Plaintiff seeks to compel contain the mental impressions of EUSA's outside counsel retained to investigate Plaintiff's grievance and provide EUSA with legal advice.

9

Thus, in order to justify discovery into these investigative documents, Plaintiff must meet the strong showing of necessity and unavailability by other means.

### 3. The Investigation Documents are Not Necessary and Plaintiff Can Obtain Information He Seeks by Other Means

Plaintiff cannot meet his high burden of showing that the information contained in the investigative documentation is both necessary and unavailable by other means. Here, Plaintiff concedes that his interview with EUSA's outside counsel was recorded and a copy provided to Plaintiff and his counsel, who was also present for the interview. (ECF No. 42, PageID.517). Thus, Plaintiff himself is able to testify as to the interview, and the interview recording is discoverable (indeed, Plaintiff has produced it in discovery already). To the extent Plaintiff seeks information about the facts relayed to EUSA's outside counsel by others, he can obtain that information through depositions of the individuals interviewed by EUSA's counsel. Plaintiff may be entitled to discovery as to nonprivileged underlying facts conveyed to EUSA's counsel, but not to the mental impressions of EUSA's counsel. *See Upjohn*, 449 U.S. at 395-396 (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F.Supp. 830, 831 (E.D. Pa. 1962)). Thus, while EUSA cannot preclude independent discovery of facts by including them in a privileged communication, Plaintiff should not be permitted to use any privileged communications or portions thereof for any purpose, or to otherwise obtain such facts, and is otherwise not entitled to the privileged communications themselves. *See*

*Van Hull v. Marriott Courtyard*, 63 F. Supp. 2d 840, 840-841 (N.D. Ohio 1999) (admonishing against "defense counsel seek[ing] to use the inadvertently disclosed *information* as a wedge to gain access to other notes made by plaintiff") (emphasis added).

### 4. Plaintiff Cites No Caselaw Holding That Attorney Investigative Notes Are Generally Discoverable

Plaintiff argues that he should be entitled to explore the substance of the advice given to EUSA by its outside counsel. (ECF No. 42, PageID.514). But the case Plaintiff relies on for this argument, *United States v. Workman*, 138 F.3d 1261 (8th Cir. 1998), focused on the fact that the defendant asserted that he had relied on counsel's advice for conduct that formed the basis of the criminal charge. *Id.* at 1263-1264. Here, no such facts are at issue. To the extent Plaintiff argues that EUSA raised the affirmative defense that it took remedial action, which justifies discovery of the investigation documents, Plaintiff is incorrect. Plaintiff's grievance implicates only DeWayne Wilcher with respect to his allegations, which notably make no reference to "discrimination." Accordingly, the remedial action EUSA took was to remove Wilcher from management responsibility over Plaintiff, and to have Lee begin reporting to Carter Clanton. Plaintiff does not allege that he experienced racially-motivated harassment after the grievance was submitted. More importantly, the decision to terminate Plaintiff was made before Plaintiff submitted his grievance; and was merely effectuated after the completion of the investigation. Thus, the

investigation is unrelated to EUSA's remedial measures affirmative defense, and Plaintiff is not entitled to conduct discovery in this respect.

Moreover, the other cases cited by Plaintiff conclude only that the question of whether investigation documents are discoverable requires the court to perform a fact-intensive review to determine what, if anything, should be produced.[4] Plaintiff also references Magistrate Judge Morris's opinion in *Martin v Saginaw County Road Commission*, 606 F.Supp.3d 639 (E.D. Mich. 2002).[5] Although a Magistrate Judge's opinion is not binding on this Court, Magistrate Judge Morris rendered her decision only after conducting extensive *in camera* review of the contested investigation documents. Accordingly, while it remains EUSA's position that the investigation documents are protected from disclosure by the attorney-client privilege and/or work product doctrine, the cases cited by Plaintiff only confirm that any order for wholesale production, absent a thorough review by the Court would be improper.

### C. Interrogatory No. 10 is Not Proportional to the Needs of this Case and Seeks Non-Relevant Information

Plaintiff's Interrogatory No. 10 sought information for *all* of EUSA's KAMs employed since January 1, 2013—a period of ten years (Plaintiff was employed by EUSA for only one year)—without any geographical limitation - including their

---

[4] To the extent Plaintiff implies that EUSA's counsel had something to do with the removal of the blog article, such implication has no basis in fact or reality.
[5] Attached as **Exhibit G**.

"detailed sales records, rankings, and/or results for each period or quarter in which sales are measured," whether any of them were placed on PIPs, and whether any of them were involuntarily terminated and the details behind the decisions to terminate. (**Ex. A**). EUSA objected to this interrogatory as vague, overbroad, and seeking non-relevant information, but provided information regarding the only other KAM, other than Plaintiff and Davis, who was placed on a PIP in the three years preceding Plaintiff's termination—a Caucasian woman. In addition, EUSA produced documents relating to this KAM's PIP. (*Id.*).

Plaintiff's assertion that EUSA is attempting to prevent Plaintiff from building a case is categorically false. As discussed above, requiring EUSA to produce documents for a ten-year period is excessively burdensome, not proportional to the needs of the case, and exceeds the bounds of discoverable information under the Federal Rules of Civil Procedure. EUSA in good faith provided responsive information and documents, restricted to a reasonable timeframe. Just because the evidence produced does not support Plaintiff's theory of liability, any only belies any allegation of discrimination, does not justify Plaintiff embarking on a fishing expedition into ten years' worth of EUSA's records. Accordingly, Plaintiff's motion to compel all information and documents regarding all KAMs, regardless of geographic location, in a ten-year period should be denied.

**D. EUSA's Redactions Protect its Confidential Business Records**

Pursuant to the terms of the SPO, EUSA designated portions of its document production as "Attorneys' Possession Only" on the grounds that those documents contained sensitive business information. For example, EUSA produced a series of emails from Plaintiff to Carter Clanton with attachments that included the names and addresses of physicians which were current or prospective customers of EUSA. The names of these physicians were redacted and the attachments (but not Plaintiff's emails) were marked "Attorneys' Possession Only" because they contain EUSA's business records. Similarly, EUSA produced additional documents relating to Plaintiff's accounts which contained customer names and financial information, which were likewise marked "Attorneys' Possession Only." While Plaintiff argues that these physicians are potential witnesses, Plaintiff has not identified any of EUSA's customer physicians on his witness list or his Rule 26(a)(1) initial disclosures, nor does he provide any justification as to why these physicians may be called as witnesses. Accordingly, the redactions and "Attorneys' Possession Only" designation are justified by EUSA's interest in protecting confidential business information.

EUSA also produced documentation for the only other KAM other than Plaintiff and Kevin Davis to be placed on a PIP in the last three years, a Caucasian woman, and marked these documents "Attorneys' Possession Only" as they involve

a non-party individual. To date, EUSA has produced a total of 619 pages of documents in discovery, of which only 74 pages are marked as "Attorneys' Possession Only." These designations and any corresponding redactions are to protect EUSA's customer and business information as well as to redact personal contact information for EUSA's current employees. Contrary to Plaintiff's assertion, Plaintiff's own PIP documentation was not marked "Attorneys' Possession Only," nor were any other documents related to his performance. To the extent Plaintiff challenges EUSA's designation of discovery material as "Attorneys' Possession Only," the designations are reasonable and comply with the terms of the SPO.

## IV. CONCLUSION

WHEREFORE, for the reasons discussed herein, Defendant EUSA requests that the Court deny Plaintiff's Motion to Compel in its entirety.

Respectfully submitted,
JACKSON LEWIS P.C.

By: /s/ Emily M. Petroski
Emily M. Petroski (P63336)
Benjamin D. Wu (P85635)
2000 Town Center, Suite 1650
Southfield, Michigan 48075
(248) 936-1900
emily.petroski@jacksonlewis.com
benjamin.wu@jacksonlewis.com

Dated: November 24, 2023      Attorneys for EUSA Pharma US LLC

## **CERTIFICATE OF SERVICE**

On this day November 24, 2023, the undersigned did cause to be filed the foregoing document with the Court using the CM/ECF system, which will send notice of its filing to all counsel of record.

<u>/s/ Emily M. Petroski</u>
Emily M. Petroski (P63336)

4890-0540-4307, v. 1