# EXHIBIT F

 Neutral
As of: November 24, 2023 6:12 PM Z

# *Murray v. City of Warren*

United States District Court for the Eastern District of Michigan, Southern Division

August 17, 2020, Decided; August 17, 2020, Filed

No. 19-13010

**Reporter**

2020 U.S. Dist. LEXIS 148006 *; 2020 WL 4783297

GREGORY MURRAY, Plaintiff, v. CITY OF WARREN, ET AL., Defendants.

**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Dismissed by, in part *Murray v. City of Warren, 2020 U.S. Dist. LEXIS 149961 ( E.D. Mich., Aug. 19, 2020)*

Motion denied by, Motion granted by *Murray v. City of Warren, 2020 U.S. Dist. LEXIS 195833 ( E.D. Mich., Oct. 22, 2020)*

## Core Terms

complaints, discovery, search term, emails, terms, requests, harassment, personnel file, discoverable, parties, unsubstantiated, allegations, records, racial discrimination, motion to compel, discipline, responses

**Counsel:** **[*1]** For Gregory A. Murray, Plaintiff: Jonathan R. Marko, Marko Law, Detroit, MI.

For City of Warren, Mayor James Fouts, Jere Green, Defendants: Raechel M. Badalamenti, Kirk and Huth, Clinton Township, MI; Robert T. Carollo, Kirk, Huth, Lange & Badalamenti, PLC, Clinton Township, MI.

**Judges:** R. Steven Whalen, United States Magistrate Judge. District Judge Gershwin A. Drain.

**Opinion by:** R. Steven Whalen

## Opinion

### OPINION AND ORDER

This is an employment discrimination case brought under *Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.* Plaintiff Gregory Murray, the City of Warren's first African American Diversity and Inclusion Coordinator, alleges that he had been "constantly subjected to the Defendant City of Warren's custom, policy and practice of racial discrimination and disparate treatment due to lack of training and other conduct by the Defendant Mayor Fouts and other department heads," and that this practice has been evidenced by "racially disparaging and insulting comments reportedly made by the Defendant Mayor Fouts [and] other Department Heads of the Defendant City of Warren." *Amended Complaint*, ECF No. 16, PageID. 138-139. These comments include an alleged racially offensive comment by Police Commissioner Jere Green. **[*2]** *Id.*, PageID.139. Plaintiff also alleges racially offensive comments by other City officials and employees, including the Mayor, and the City's failure to impose any meaningful discipline or provide appropriate training. *Id.*, PageID.140-145.

Before the Court are Plaintiff's Motion to Compel Discovery [ECF No. 23] and Plaintiff's Motion to Compel Defendant's Answers to Plaintiff's Second Request to Produce [ECF No. 32].

### I. GENERAL DISCOVERY PRINCIPLES

*Fed.R.Civ.P. 26(b)* provides as follows concerning the scope of discovery in a civil case:

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

In terms of document requests, **[\*3]** electronically stored information, including emails, is discoverable under *Fed.R.Civ.P. 34(a)(1)(A)*. *See* Advisory Committee Not to 2006 Amendments ("*Rule 34(a)* is amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper documents.").

The Court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc., 194 F.3d 708 (6th Cir. 1999)*.

## II. DISCUSSION

### A. Motion to Compel [ECF No. 23]

#### 1. Other Complaints of Discrimination

As a preliminary matter, Defendants state that they have served Supplemental Responses to Interrogatory No. 2 and Requests for Production Nos. 14, 15, 16, and 20. *Defendants' Response*, ECF No. 26, PageID.378. Plaintiff contends that he received no such responses. *Plaintiff's Reply*, ECF No. 27, PageID. 477-478. Maybe they got lost in the mail. In any event, while I hope that the parties would have worked this out themselves, I will order that Defendants re-serve these responses.

Interrogatory Nos. 8, 10, and 17 seek information about previous complaints of discrimination against Defendants. Interrogatory No. 8 asks for information regarding "each oral or written complaint of discrimination of any kind against Defendant" for the past 10 years. Interrogatory No. 10 asks for "grievances, EEO, EEOC, **[\*4]** Complaints, or other complaints of any kind." Interrogatory No. 17 asks Defendants to identify any other lawsuits against them claiming sexual harassment, discrimination, retaliation, or wronful discharge. Similarly, Request to Produce ("RTP") No. 17 asks for "any and all discrimination complaints" against Defendant Jere Green.

There are two variables at play in these requests. First is the range of individuals from whom this information is sought. The named Defendants are the City of Warren, Mayor Fouts, and Jere Green. However, Plaintiff in his requests defines "Defendant" as "City of Warren, and/or his/her/its agents attorneys, successors and assigns," which would encompass a large number of people. The second variable is the type of discrimination complaint.

This case involves claims of racial discrimination, but the requests encompass all types of discrimination, including sexual harassment.

Regarding the range of individuals about whom this information is sought, Plaintiff brings a municipal liability claim against Defendant City of Warren under *Monell v. Department of Social Services of City of New York 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*, and argues that the requested information will show "Defendant[']s custom and policy of harassment and discrimination over time." *Motion [\*5]*, ECF No. 23, PageID.228. The named individual Defendants are the Mayor and the Police Commissioner, high-ranking elected and appointed individuals. Information about all discrimination complaints, for the past 10 years, against all employees and agents of Michigan's third-largest city would be extraordinarily burdensome, marginally relevant, and not proportional to the needs of the case. The scope of these requests will therefore be limited to the named individual Defendants and to City employees or agents who are appointed by the Mayor or who report directly to the individual Defendants. Based on the allegations in the amended complaint [ECF No. 16] and discovery to date, this will also include Barbara Beyer, Ethan Vinson, and Shawn Johnson.

As to whether Plaintiff is entitled to discovery of all discrimination complaints or just those that are based on race, it depends upon the outcome of those complaints. Any complaints of discrimination that resulted in an official finding of misconduct or the imposition of any discipline or sanction, regardless of the type of discrimination claimed, is discoverable. *See Sanford v. City of Detroit, 355 F. Supp. 3d 619, 622 (E.D. Mich. 2019)*. This would include EEO or EEOC findings, letters of reprimand or other internal **[\*6]** disciplinary documents, and judgments from any court.

However, complaints of discrimination that have not resulted in discipline or adverse findings are limited to race-based complaints, as alleged in the complaint. Again, *Sanford* is pertinent:

> "[D]iscovery of unsubstantiated complaints or complaints that did not lead to discipline are relevant only if they involve the same type of conduct alleged in the complaint. *See Frails [v. City of New York, 236 F.R.D. 116 (E.D.N.Y. 2006)], at 117* ('Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable');

2020 U.S. Dist. LEXIS 148006, *6

*Williams v. City of Hartford, 2016 U.S. Dist. LEXIS 57709, 2016 WL 1732719, at *6 (D.Conn. 2016)*(providing for discovery of unsubstantiated complaints of defendant police officer's misconduct 'of a similar nature' to that alleged in the complaint); *Chillemi v. Town of Southampton, 2015 U.S. Dist. LEXIS 136998, 2016 WL 1781496, at *6 (E.D.N.Y. 2015)*(same); *Martin v. Conner, 287 F.R.D. 348 (D. Maryland 2012)*('[F]ederal cases support the proposition that unsustained complaints should be discoverable as long as they are relevant to the cause of actions'); *Wilson v. Hill, 2010 U.S. Dist. LEXIS 127833, 2010 WL 5014486 (S.D. Ohio 2010)*(approving discovery of unsubstantiated claims of excessive force, the claim made in the complaint)." *Id. at 623*.

As to unsubstantiated claims other that they type alleged in the complaint, *Frails* held, "Unsubstantiated instances of misconduct not related to the allegations **[*7]** raised in the instant complaint are not reasonably likely to lead to such evidence, and need not be produced." *236 F.R.D. at 118*. Therefore, as to complaints that did not lead to any discipline or adverse action, Plaintiff is entitled only to those that involve race.

## 2. Personnel Files

Plaintiff is correct that there is no general privilege that attaches to personnel files. *Oates v. Target Corp., 2012 WL 4513731 (E.D. Mich. 2012)*. At the same time, there is a non-privileged privacy interest that attaches to personnel files. "The Sixth Circuit has recognized a privacy interest in personnel files, but has not always protected them from disclosure in discovery." *Ford Motor Co. v. Versata Software, Inc., 2017 U.S. Dist. LEXIS 144933, 2017 WL 3944392, at *3 (E.D. Mich. Aug. 7, 2017)*, report and recommendation adopted, *2017 U.S. Dist. LEXIS 144484, 2017 WL 3913843 (E.D. Mich. Sept. 7, 2017)*, citing *Knoll v. American Telephone and Telegraph, 176 F.3d 359, 365 (6th Cir. 1999)*. In *Versata*, the Court found that while personnel records were not privileged, they were subject to a heightened showing of relevance

"When evaluating the discoverability of personnel records, courts have required a heightened showing of relevance and need. *Fritz v. Charter Twp. of Comstock, 2010 U.S. Dist. LEXIS 45260 (W.D. Mich. May 10, 2010)*; see also *Compuware Corp. v. Moody's Investors Servs., Inc., 222 F.R.D. 124, 134 (E.D. Mich. 2004)* (holding that personnel

files were not discoverable where the plaintiff failed to show that they were clearly relevant and that a compelling need existed); *Miller v. Fed. Express Corp., 186 F.R.D. 376, 384 (W.D. Tenn. 1999)* ('Personnel records, because of the privacy interests involved, should not be ordered produced except upon a compelling showing of relevance.'); **[*8]** *Raddatz v. Standard Register Co., 177 F.R.D. 446, 447-48 (D. Minn. 1977)* (noting that because personnel files contain an employee's sensitive and personal data, ordering their disclosure is a highly intrusive act that should not be undertaken lightly)"

*2017 U.S. Dist. LEXIS 144933, 2017 WL 3944392, at *3*

Plaintiff alleges that Defendants Fouts and Green, as well as Ethan Vinson, "participated in, or perpetuated the discrimination, harassment, and retaliation faced by the Plaintiff." ECF No. 23, PageID.229. Material normally found in a personnel file, such as salary, insurance, health, Social Security numbers, and family information, would have no relevance to the issues in this case. On the other hand, grievances or complaints filed against these individuals involving claims of racial discrimination or harassment, or disciplinary actions would clearly be relevant and discoverable. In addition, any information relating to these individuals' responses to third-party claims of race-based discrimination is relevant. Therefore, as discussed in the preceding section, Plaintiff is entitled to any information within the personnel files relating to complaints or allegations of racial discrimination or harassment, regardless of whether they led to disciplinary action, and including responses to third-party claims of **[*9]** racial discrimination or harassment.

## 3. Communications, Emails, and Phones

RTP No. 16 requests "[a]ny and all communications, including but not limited to emails, relating to the handling of Plaintiff's reports of discrimination." Under the broad scope of permissible discovery under *Rule 26*, the requested material is clearly relevant. Defendants will therefore respond to this request, and will provide a privilege log for any material to which attorney-client or work product privilege is claimed.

RTP No. 24 seeks *all* emails from accounts belonging to or used by Fouts, Green, and Vinson. RTP No. 25 narrows this request to emails from these individuals' accounts that contain specified search terms. RTP No.

2020 U.S. Dist. LEXIS 148006, *9

24 is overly broad, and would likely include a significant amount of irrelevant information. It is therefore unduly burdensome, and not proportional to the needs of this case.

Given the overbreadth of RTP No. 24, RTP No. 25 appropriately seeks to limit the request with the use of relevant search terms. Generally, the choice of search terms is a matter appropriately left to the parties, with the assistance of experts when necessary. In *McMaster v. Kohl's Dep't Stores, Inc., 2020 WL 4251342, at *3 (E.D. Mich. July 24, 2020)*, I noted as follows:

> "Here is another case in which the Court **[*10]** is called upon to decide whose competing list of search terms is better suited for the search of large amounts of electronically stored information. In *United States v. O'Keefe, 537 F. Supp. 2d 14, 23-24 (D.D.C. 2008)*, the Court, reflecting on the inherent complexity of formulating refined search terms, observed:
>
> > 'Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics.'
>
> Finding that the resolution of such questions was 'beyond the ken of laymen,' and should require the assistance of experts, the Court continued:
>
> > 'Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread.' *Id.*"

In *McMaster*, I then directed the parties to confer regarding the search terms, with the assistance of an expert if necessary:

> "I, for one, have no interest in going where angels fear to tread. Therefore, if the parties cannot agree on appropriately limited search terms, they will share the cost of retaining an expert to assist them. If they still cannot agree, then Plaintiff may renew his **[*11]** motion regarding the search terms, and will provide the Court with an expert report substantiating his position."

Given the claims in the present case, some of the designated search terms are evidently relevant. Emails referring to the Plaintiff (and containing the terms "Greg" or "Murray") are relevant and must be produced. Also, emails containing the terms harass!, chimpanzee!,

black!, or n***** are relevant. Defendants will apply those search terms and produce any emails containing those terms, subject to claims of privilege and production of a privilege log. As to any other terms, the parties will follow the procedure set forth in *McMaster*, and if they cannot agree on additional, appropriately narrowed terms, will share in the cost of an expert to assist them.

In RTP No. 26, Plaintiff, in his most audacious request, asks for examination of the cell phones of James Fouts and Jere Green. Apart from the fact that Plaintiff has made no predicate showing that an examination of this breadth would be likely to turn up relevant information, *see Tompkins v. Wayne County Airport Auth., 278 F.R.D. 387 (E.D. Mich. 2012)*, these individuals responded that (1) they do not possess City-issued cell phones, and (2) neither has retained the personal cell phones they were **[*12]** using during the relevant time period. This request will be denied.

### 4. Tax and Payroll Records of Plaintiff

In RTP No. 14, Plaintiff seeks tax records relating to his employment, specifically W-2 and Form 1099 earnings statements. In RTP No. 15, he requests payroll information. This request is not burdensome, and in fact should be quite easy for the City to produce. These requests will be granted.

Finally, Defendants will produce a privilege log regarding any documents to which they claim privilege.[1]

### B. Motion to Compel [ECF No. 32]

In this motion, Plaintiff seeks responses to his Second Request to Produce. Specifically, in RTP No. 1, he seeks "any and all emails from email accounts belonging to or used by Amanda Mika from the last five years." Ms. Mika is the executive assistant to Mayor Fouts, and Plaintiff states that she is the conduit for emails directed to Mayor Fouts. However, similarly to RTP No. 24 in Plaintiff's First Set of Requests to Produce, discussed in the preceding section, this request is overly broad and not proportional to the needs of the case. The motion to compel as to RTP No. 1 is denied.

---

[1] Until the privilege log is produced and reviewed by Plaintiff, the request for the Court's *in camera* review, or a determination of privilege, is premature.

2020 U.S. Dist. LEXIS 148006, *12

RTP No. 2 is a narrower request for Ms. Mika's emails that contain the **[\*13]** same search terms discussed above with regard to RTP No. 25 of Plaintiff's First Set of Requests to Produce. For the same reasons discussed above, the Defendants will produce Ms. Mika's emails containing the terms harass!, chimpanzee!, black!, or n*****. As to any other search terms, the parties will employ the protocol set forth in the preceding section.

### III. CONCLUSION

Plaintiff's motions to compel [ECF No. 23 and ECF No. 32] are GRANTED IN PART AND DENIED IN PART, for the reasons and under the terms set forth above.

IT IS SO ORDERED.

Date: August 17, 2020

/s/ R. Steven Whalen

R. Steven Whalen

United States Magistrate Judge

---

**End of Document**