# **EXHIBIT A**



Neutral
As of: November 28, 2023 7:39 PM Z

# Herring v. Sci Tenn. Funeral Servs.

United States District Court for the Eastern District of Tennessee

May 3, 2017, Filed

NO. 2:15-CV-280

**Reporter**
2017 U.S. Dist. LEXIS 230356 *

ANDREA HERRING v. SCI TENNESSEE FUNERAL SERVICES, LLC d/b/a EAST LAW MEMORIAL PARK and EAST LAWN FUNERAL HOME

**Prior History:** Herring v. Sci Tenn. Funeral Servs., 2017 U.S. Dist. LEXIS 230353 (E.D. Tenn., May 3, 2017)

## Core Terms

mitigate, claimant, funeral home, interrogatory, diligence, responds, damages, substantial equivalent, positions, asserts, answer to an interrogatory, reasonable diligence, reasonable care, issue of fact, backpay, per day, discovery, providers, responses, suitable, update

**Counsel: [*1]** For Andrea Herring, Plaintiff: Robert Wisdom Wheeler, Donna J Mikel, Douglas S Hamill, Patrick Beard Schulman & Jacoway PC, Chattanooga TN.

For SCI Tennessee Funeral Services LLC, doing business as, SCI Tennessee Funeral Services LLC, East Lawn Memorial Park, Defendants: Richard Andrew Hutchinson, Steven H Trent, LEAD ATTORNEYS, Ronald S Range III, Baker Donelson Bearman Caldwell & Berkowitz PC (Johnson), Johnson City TN.

For SCI Tennessee Funeral Services LLC, East Lawn Funeral Home, Defendant: Richard Andrew Hutchinson, LEAD ATTORNEY, Ronald S Range III, Baker Donelson Bearman Caldwell & Berkowitz PC (Johnson), Johnson City TN.

**Judges:** Clifton L. Corker, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** Clifton L. Corker

## Opinion

ORDER

Defendant has filed a Motion to Exclude Testimony Regarding Certain Job Applications [Doc. 62]. Defendant "anticipate[s] that Plaintiff will offer testimony of applying to approximately 2,160 potential jobs in an attempt to mitigate her damages, as required by law." [Doc. 62, pg. 1]. Defendant asserts that the plaintiff did not supplement her discovery responses with respect to inquiries by the defendant of what jobs she applied for as required under *Fed.R.Civ.Pro. 26(e)*.

Defendant served discovery requests on **[*2]** the plaintiff which included an interrogatory seeking detailed information with respect to any attempts to secure employment after her tenure with the defendant ended on November 16, 2013. In this regard, defendant asked the dates on which she applied for employment; whether the application was written or oral; who she spoke to if it was an oral application; whether a job was offered on the basis of any such application; and if an offer was extended, the terms of the offer and her response. Plaintiff responded as follows:

> Plaintiff initially sought employment at all funeral homes or burial providers within a reasonable distance from her home. After seeking employment with funeral homes and service providers in her immediate area and being told that Defendant was interfering with her ability to work there, Plaintiff widened the scope of her search and began searching for work in the Chattanooga area and outside of the funeral home business. For example, she applied at Outback, Lonestar, Chili's, Olive Garden, and also used Monster and other job-search engines to apply for accounting, payment, and restaurant jobs in the area. She applied for at least 5-7 jobs per day (if not more).

[Doc. **[*3]** 62-1, pg. 4].

Defendant took the "5-7 jobs per day" estimation and multiplied it by the 360 days between her termination with the defendant and her beginning work at Stonemore, thus arriving at the figure of 2,160 jobs for which plaintiff applied. Plaintiff later supplemented her answer by identifying various funeral homes and a construction company to which she applied. Plaintiff stated in her deposition that she was unable to access her Monster.com account to ascertain the jobs she applied for through that service. She also admitted that she did not keep a list of the "five to seven a day" potential employers that she referred to in her answer to the interrogatory. Thus, defendant states "she had no evidence to support her contention that she applied to thousands of jobs when first responding..." to the interrogatory. [Doc. 62, pg. 4]. Defendant points out that under *Rule 26(e)(1)*, she has the continuing obligation to update her interrogatory responses, and that under *Rule 37(c)(1)*, her failure to do so means she cannot use that information. Therefore, defendant asserts that she should not be allowed to testify as to her undocumented oral attempts to apply for jobs and thus those attempts to mitigate her damages **[*4]** should be excluded as a sanction for failure to update her interrogatory answer.

Defendant continues to the next prong of her argument which is that plaintiff's failure to mitigate should result in this Court finding that "Defendant's liability for back pay should be completely eliminated for plaintiff's deliberate failure to disclose her efforts at mitigation." *Id.* at 6.

Plaintiff responds by asserting that the burden is on the defendant to show a failure to mitigate. The Sixth Circuit has held that:

> The finding that a claimant has exercised reasonable diligence in seeking other suitable employment following a discriminatory discharge is an issue of fact ... Once a claimant establishes a prima facie case and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant.... The Defendant may satisfy his burden only if he establishes that: 1) there were substantially equivalent positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions....

Rasimas v. Mich. Dept. of Mental Health, 714 F.2d 614, 623-24 (6th Cir. 1983)(citations omitted).

It is clear from *Rasimas* that the burden of proving the defense **[*5]** of failure to mitigate as a bar to back pay is on the defendant. To do so, the defendant must show both that substantially equivalent positions were available and that Ms. Herring did not use reasonable care and diligence looking for such a job. Importantly, the exercise of reasonable diligence is a question of fact. Of course, defendant seeks to cut off this inquiry on the basis that the plaintiff did not supplement her answer to the interrogatory and supply the information requested as to the numerous jobs she claims to have sought. Plaintiff responds that documentary evidence does not exist, and that there is no rule that it must exist to testify about attempts to gain employment. In any event, *Rasimas* also noted the following:

> [a] claimant is only required to make reasonable efforts to mitigate damages, and is not held to the highest standards of diligence. The claimant's burden is not onerous, and does not require him [or her] to be successful in mitigation.... The reasonableness of the effort to find substantially equivalent employment should be evaluated in light of the individual characteristics of the claimant and the job market.

Id. at 624. Of course, this lack of documentation and the **[*6]** sheer number of claimed oral attempts to find a suitable job go to the weight of the evidence and are proper subjects for vigorous cross-examination. But this Court will not rule on an issue of fact in deciding a motion in limine. The Motion [Doc. 62] is DENIED.

SO ORDERED:

/s/ Clifton L. Corker

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

◆ Positive
As of: November 28, 2023 7:40 PM Z

# *Queen v. City of Bowling Green*

United States District Court for the Western District of Kentucky, Bowling Green Division

September 28, 2017, Decided; September 29, 2017, Filed

CIVIL ACTION NO. 1:16CV-00131-JHM

**Reporter**
2017 U.S. Dist. LEXIS 160425 *

JEFFREY QUEEN, PLAINTIFF VS. CITY OF BOWLING GREEN And DUSTIN ROCKROHR, DEFENDANTS

**Subsequent History:** Summary judgment granted, in part, summary judgment denied, in part by *Queen v. City of Bowling Green, 2018 U.S. Dist. LEXIS 121299 (W.D. Ky., July 20, 2018)*

## Core Terms

subpoenas, tax return, records, discovery, employment record, protective order, mitigate, damages, benefits, privacy, personnel file, disclosure, asserts, courts, good cause, lost wages, documents, former employer, motion to quash, discoverable, contends, relevant information, firefighter, complaints, pertain, reasons, constructive discharge, performance review, scope of discovery, circumstances

## Case Summary

### Overview
HOLDINGS: [1]-The employee was entitled to an order modifying the proposed subpoenas to his former employers, under *Fed. R. Civ. P. 45(d)(3)(A)(iii)*, because the request for the complete personnel file was too broad because personnel files could have contained material that was both private and irrelevant to the claims and defenses in the action. The document request was limited to the records within each of the employee's personnel files reflecting performance reviews, evaluations, complaints, and reasons for his departure or termination, because those records fell within *Fed. R. Civ. P. 26(b)(1)*; [2]-The employee's tax returns for the years 2011 through 2015 were not discoverable because they did not fall within *Rule 26(b)(1)* because the employee's claim for lost wages and benefits and his duty to mitigate did not arise until his constructive discharge in May 2016.

### Outcome
Motion to quash denied in part and granted in part. Scope of document request modified. Objection to document request for tax returns sustained in part and overruled in part.

## LexisNexis® Headnotes

Civil Procedure > Preliminary Considerations > Justiciability > Standing

Civil Procedure > Discovery & Disclosure > Discovery > Subpoenas

### *HN1*[ ] Justiciability, Standing

Motions to quash subpoenas are governed by *Fed. R. Civ. P. 45(d)(3)*. Typically, a party does not have standing to quash or object to a *Rule 45* subpoena served on a non-party, unless the party can demonstrate a privilege or other personal right in regard to the requested documents.

Civil Procedure > Discovery & Disclosure > Discovery > Subpoenas

### *HN2*[ ] Discovery, Subpoenas

There are three subparts to *Fed. R. Civ. P. 45(d)(3)*. Subpart (d)(3)(A) identifies four circumstances where courts must quash or modify a subpoena. Subpart (d)(3)(B) specifies two situations where courts have the discretion to quash or modify a subpoena to protect a person subject to or affected by a subpoena. Subpart (d)(3)(C) affords courts with the discretion to instead

specify conditions under which an appearance or production is made, provided the circumstances in subpart (d)(3)(B) exist and the serving party satisfies two requirements.

Civil Procedure > Discovery & Disclosure > Discovery > Subpoenas

**HN3**[ ] **Discovery, Subpoenas**

*Fed. R. Civ. P. 45(d)(3)(B)* and *(C)* pertain to a subpoena that seeks the disclosure of trade secrets, confidential commercial information, or the opinion of an unretained expert.

Civil Procedure > Discovery & Disclosure > Discovery > Subpoenas

**HN4**[ ] **Discovery, Subpoenas**

*Fed. R. Civ. P. 45(d)(3)(A)(iv)* requires a weighing of the likely relevance of the requested material against the burden on the movant to produce the material.

Civil Procedure > Discovery & Disclosure > Discovery > Relevance of Discoverable Information

Civil Procedure > Discovery & Disclosure > Discovery > Subpoenas

**HN5**[ ] **Discovery, Relevance of Discoverable Information**

While *Fed. R. Civ. P. 45(d)(3)* does not identify irrelevance as a reason for quashing a subpoena, courts have held that the scope of discovery under a subpoena is the same as the scope of discovery under *Fed. R. Civ. P. 26*.

Civil Procedure > Discovery & Disclosure > Discovery > Relevance of Discoverable Information

**HN6**[ ] **Discovery, Relevance of Discoverable Information**

*Fed. R. Civ. P. 26(b)(1)* guides the evaluation of any discovery request. The Rule provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Fed. R. Civ. P. 26(b)(1)*. In assessing whether the discovery is proportional to the needs of the case, courts should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Fed. R. Civ. P. 26(b)(1)*. The Rule also directs that information within this scope of discovery need not be admissible in evidence to be discoverable. *Fed. R. Civ. P. 26(b)(1)*.

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

**HN7**[ ] **Discovery, Protective Orders**

*Fed. R. Civ. P. 26(c)* affords the court with the discretion to further limit the scope of discovery under certain circumstances. Specifically, the court may issue a protective order forbidding the disclosure or discovery or forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters to prevent annoyance, embarrassment, oppression, or undue burden or expense where the movant has established good cause for such an order. *Fed. R. Civ. P. 26(c)(1)(A)* and *(D)*. To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements.

Civil Procedure > Discovery & Disclosure > Discovery > Relevance of Discoverable Information

Labor & Employment Law > Discrimination > Disparate Treatment > Evidence

**HN8**[ ] **Discovery, Relevance of Discoverable Information**

District courts within the Sixth Circuit have concluded that records reflecting performance reviews,

evaluations, complaints, and reasons for a former employee's departure or termination from former employers are discoverable in employment discrimination cases. Performance reviews, evaluations, and reasons for termination from prior employers is within the scope of permissible discovery.

> Civil Procedure > ... > Discovery > Methods of Discovery > Inspection & Production Requests
>
> Civil Procedure > Discovery & Disclosure > Discovery > Relevance of Discoverable Information
>
> Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

*HN9*[🔽] **Methods of Discovery, Inspection & Production Requests**

*Fed. R. Civ. P. 34* provides for the discovery of documents in the possession, custody, or control of an opposing party, provided that the requested documents fall within the scope of *Fed. R. Civ. P. 26(b)(1)*. *Fed. R. Civ. P. 34(a)(1)*. A party may object to a document request under *Rule 34(b)(2)(C)* and may move for a protective order under *Rule 26(c)*.

> Civil Procedure > ... > Discovery > Methods of Discovery > Inspection & Production Requests
>
> Tax Law > Federal Tax Administration & Procedures
>
> Civil Procedure > Discovery & Disclosure > Discovery > Relevance of Discoverable Information

*HN10*[🔽] **Methods of Discovery, Inspection & Production Requests**

It is well-settled in the Sixth Circuit that tax returns are not privileged from disclosure. However, a judicial consensus exists that, as a matter of public policy, caution should be exercised in ordering the disclosure of tax returns. Some district courts have applied a two-part standard that analyzes whether the returns are relevant within the meaning of *Fed. R. Civ. P. 26(b)(1)* and, if so, whether the information is not otherwise available. However, the U.S. Court of Appeals for the Sixth Circuit has not adopted this two-part standard. Other district courts have held that the appropriate analysis is limited to whether the tax returns fall within the scope of *Rule 26(b)(1)*. The U.S. District Court for the Western District of Kentucky, Bowling Green Division, concludes that the appropriate analysis is whether the tax returns are relevant to the claim or defense of any party. *Fed. R. Civ. P. 26(b)(1)*. Courts typically find that tax returns fall within the scope of *Rule 26(b)(1)* where a party's income is in issue, as, for example, where a claim for lost wages has been asserted. In such cases information in tax returns may also be relevant to mitigation of damages.

**Counsel:** [*1] For Jeffrey Queen, Plaintiff: Aaron J. Bentley, Michele Henry, LEAD ATTORNEYS, Craig Henry PLC, Louisville, KY.

For City of Bowling Green, Dustin Rockrohr, Defendants: Jason B. Bell, LEAD ATTORNEY, Bell Hess & Van Zant, PLC, Elizabethtown, KY; H. Eugene Harmon, Bowling Green, KY.

**Judges:** H. Brent Brennenstuhl, United States Magistrate Judge.

**Opinion by:** H. Brent Brennenstuhl

## Opinion

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Queen has moved to quash the *Rule 45* subpoenas that Defendants' propose to serve on his former employers (DN 23). Queen has also moved to quash Defendants' *Rule 34* document request for his tax returns from 2011 through the date of trial (Id.). Defendants the City of Bowling Green and Captain Dustin Rockrohr (where appropriate they will be referred to collectively as "the City") have filed an objection and response to the motions (DN 26). Queen has filed a reply in support of his motions (DN 27). This matter is ripe for determination.

Background

Queen names the City of Bowling Green and Captain Dustin Rochrohr as Defendants in his complaint asserting hostile work environment claims under the *Kentucky Civil Rights Act (KCRA) (KRS 344, et seq)*.; a constructive discharge claim; a claim under the *Family and Medical Leave Act* [*2] *(FMLA) (29 U.S.C. § 2615)*;

and a retaliation claim under KCRA (*KRS 344, et seq.*) (DN 1-2). The complaint alleges that the City's Fire Department hired Queen as a firefighter in September 2011 and, throughout his employment, it permitted co-workers and management to make, on a pervasive basis, inappropriate comments related to both his religious beliefs and perceived sexual orientation (Id. PageID # 6-13). Further, Queen asserts that the City's Fire Department permitted his co-workers and management to make, on a pervasive basis, denigrating comments about the race, religion, and ethnicity of the citizens of the City (Id.). Queen alleges retaliation after he complained to his supervisor, Rochrohr, in 2012 (Id.). Further, Queen accuses the City's Fire Department of failing to investigate and address the problem after he filed anonymous complaints with its Human Resources Department in 2013 and 2014 (Id.). He also accuses the City of failing to take action after he filed a complaint with its ethics hotline in 2015 (Id.). Queen alleges that due to significant emotional distress, he had to take a leave of absence under the *FMLA* in February 2016 (Id.). Queen claims that while he was on the *FMLA* leave of absence, management **[*3]** with the City's Fire Department improperly subjected him to multiple requests for information regarding his medical condition (Id.).

In compliance with *Fed. R. Civ. P. 45(a)(4)*, the City provided Queen with prior written notice of its intent to obtain his personnel records by serving a subpoena duces tecum on each of the following non-party entities: Rivergate Toyota, Action Nissan, Cheddars Restaurant, Verizon Wireless, Cellular Plus, and Sprint (DN 23-2).[1] Each proposed subpoena duces tecum requests "a certified copy of the complete personnel file of Jeffrey Sean Queen, including but not limited to payroll records, employee reprimand(s), and/or disciplinary forms . . ."[2] (Id. PageID # 112-17).

Pursuant to *Fed. R. Civ. P. 33* and *34*, the City has propounded interrogatories and requests for production of documents to Queen (DN 23-5). Request No. 7 seeks complete copies of Queen's "personal and business federal and state income tax returns, with all schedules, for the years 2011 through 2015 and all years thereafter" (Id. PageID # 144).

Arguments of the Parties

1. Queen's Argument

Citing *Fed. R. Civ. P. 26(b)(1)*, Queen contends that the City cannot meet its burden of demonstrating that his prior employment records and tax returns are relevant (DN 23-1 PageID **[*4]** # 163-). He contends that the employment records will not provide relevant information regarding his efforts or ability to mitigate his damages because his work in sales and food service is not substantially similar to his firefighting work (Id.). He indicates that records pertaining to his performance history in the sales and food service jobs will not provide relevant information to his performance as a firefighter (Id.). Queen indicates because he has already verified that he has not made any prior complaints of harassment or discrimination, the subpoenas are nothing more than an impermissible fishing expedition (Id.).

Queen contends that his tax returns prior to 2016 will not provide relevant information regarding mitigation because the issue is what he has earned since his constructive discharge in 2016 (Id.). Further, Queen asserts that his tax returns from 2016 through trial contain information that is not relevant to his KCRA and *FMLA* claims because they include his spouse's income, investment income and losses, charitable donations and other deductions, child care, and other personal information (Id.). All that is relevant to his KCRA and *FMLA* claims is his income earned through **[*5]** employment since his constructive discharge (Id.). Therefore, Queen contends it is sufficient that he has produced his W-2s and 1099s and is willing to supplement each year until the case resolves (Id.).

2. The City's Response

Citing the doctrines of waiver and estoppel, the City argues that Queen should be precluded from objecting to their efforts to obtain his employment records after he successfully argued for and obtained the employment records of Rochrohr and City firefighters Eric Smith, Paul Campbell, and Donnie Frye (DN 26 PageID # 173-75). The City asserts that the employment records need not be admissible in evidence at trial to be discoverable under the relevance standard in *Fed. R. Civ. P. 26(b)(1)* (Id. PageID # 175-77, 180-84). Further, the City contends that Queen's employment records probably

---

[1] The chart prepared by the City, indicates that Queen worked for Sprint in 2007, for Cellular Plus in 2009-2010, for Cheddars Restaurant in 2010, for Action Nissan in 2010, for Verizon Wireless in 2011, and for Rivergate Toyota in 2011 (DN 23-1 PageID # 162; DN 26-2).

[2] A copy of each proposed subpoena duces tecum is attached to the notice (DN 23-2).

contain information relevant to both liability and damages, are not subject to a privilege, and pertain to only four years of records from six different employers (Id.). It points out that subpoenaing these employment records from the six different employers imposes no burden or expense on Queen (Id.). The City argues while Queen styles his motion as a "motion to quash," it is a motion for protective order [*6] and he has not satisfied the "good cause" standard under Fed. R. Civ. P. 26(c) (Id. PageID # 177-79). It asserts that the Court should not be swayed by Queen's general assertions that the subpoenas are a "fishing expedition" and that the employment records will not offer information relevant to his claim of pervasive harassment during his employment with the City's Fire Department (Id. PageID # 179-80).

The City contends that complete copies of Queen's tax returns are relevant within the meaning of Fed. R. Civ. P. 26(b)(1) because he is claiming lost wages (Id. PageID # 184-85). It also points out that the protective order already in place provides adequate safeguards and protections to both the employment and tax records (Id. PageID # 185-86). The City encourages the Court not to limit or restrict the scope of the discovery requests for Queen's employment and tax records as it may impact the discovery of information highly relevant to the claims and defenses in this case (Id. PageID # 186-87). Finally, the City argues that the information it seeks through the discovery requests may be relevant to Queen's credibility and could actually help him (Id. PageID # 187-88).

3. Queen's Reply

Queen argues that when discovery is sought through [*7] a subpoena, a motion to quash the proposed subpoena is appropriate under Fed. R. Civ. P. 45(d)(3) (DN 27 PageID # 223-24). He asserts that Rule 26(b)(1) applies to both the subpoenas and the Rule 34 document request, and under this Rule the City must demonstrate the documents it seeks are both relevant and proportional (DN 27 PageID # 223-24). Queen contends that the subpoenas seek documents that have no relevance to the claims and defenses in this case, as there is nothing about his prior sales and food services work that pertains to his ability to fight fires or his ability to mitigate his damages because they are not substantially equivalent positions (Id. PageID # 224-25, 229-30). Additionally, Queen believes that the subpoenas are burdensome to him because they result in an unnecessary invasion of his privacy as the requested records may include insurance, tax, and medical information (Id.). Queen claims that the City's judicial estoppel and waiver argument is not applicable to this discovery dispute (Id. PageID # 225-28). Queen argues because the employment records are not relevant under Rule 26(b)(1), the Court need not consider whether "good cause" exists to issue a protective order (Id. PageID # 228-29). Queen disputes that his [*8] prior employment records will shed light on his credibility (Id. PageID # 230-31). Queen asserts that the court should protect his tax records from discovery because his 1099s and W-2s provide exactly the information that is discoverable regarding subsequent earnings (Id. PageID # 231-32).

Discussion

1. Queen's Motion to Quash as to the Employment Records

HN1[↑] Motions to quash subpoenas are governed by Rule 45(d)(3).³ See Black v. Kyle-Reno, No. 1:12-CV-503, 2014 U.S. Dist. LEXIS 22275, 2014 WL 667788, at *1 (S.D. Ohio Feb. 20, 2014). Typically, a party does not have standing to quash or object to a Rule 45 subpoena served on a non-party, unless the party can demonstrate a privilege or other personal right in regard to the requested documents. See e.g., Sys. Prods. & Solutions, Inc. v. Scramlin, No. 13-CV-14947, 2014 U.S. Dist. LEXIS 109389, 2014 WL 3894385, at *7 (E.D.Mich. Aug. 8, 2014) (addresses standing to quash); Iron Workers' Local Pension Fund v. Watson Wyatt & Co., Nos. 04-CV-40243, 07-CV-12368, 2009 U.S. Dist. LEXIS 18335, 2009 WL 648503, at *6 (E.D.Mich. Mar. 10, 1999) (addresses standing to object). Here, the Court finds that Queen has standing to quash because of a personal interest in his employment records that are held by these six former employers. See Halawani v. Wolfenbarger, No. 07-15483, 2008 U.S. Dist. LEXIS 100482, 2008 WL 5188813, at *1 (E.D. Mich. Dec. 10, 2008).

HN2[↑] There are three subparts to Rule 45(d)(3). Subpart (d)(3)(A) identifies four circumstances where courts must quash or modify a subpoena. Subpart (d)(3)(B) specifies two situations where courts have the discretion to quash or modify a subpoena [*9] "[t]o protect a person subject to or affected by a subpoena[.]" Subpart (d)(3)(C) affords courts with the discretion to instead specify conditions under which an appearance or production is made, provided the circumstances in

---

³ There is no dispute that the City complied with the notice requirement in Fed. R. Civ. P. 45(a)(4).

*subpart (d)(3)(B)* exist and the serving party satisfies two requirements.

Queen has not specified the subpart under which he is moving to quash the subpoenas (DN 23, 27). Thus, the Court will have to determine which subpart applies to his motion.

**HN3**[ ] *Subparts (d)(3)(B)* and *(C)* pertain to a subpoena that seeks the disclosure of trade secrets, confidential commercial information, or the opinion of an unretained expert. *See e.g. In re Correia, No. 5:14-CV-00700-VAP-DTG, 2016 U.S. Dist. LEXIS 144212, 2016 WL 6683579, at \* (E.D. Mich. Sept. 29, 2016)* (seeking opinion of unretained expert); *Kruse v. Regina Caeli, Inc., No. 16-10304, 2016 U.S. Dist. LEXIS 86445, 2016 WL 3597608, at \* (E.D. Mich. July 5, 2016)* (seeking confidential commercial information). These two subparts do not apply to Queen's because the proposed subpoenas seek disclosure of his employment records.

*Subpart (d)(3)(A)* reads as follows:

> *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> **(i)** fails to allow a reasonable time to comply;
>
> **(ii)** requires a person to comply beyond the **[\*10]** geographical limits specified in *Rule 45(c)*;
>
> **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> **(iv)** subjects a person to undue burden.

Clearly, Queen is not relying on the circumstances identified in romanettes (i) and (ii) as a basis for quashing the proposed subpoenas. **HN4**[ ] Romanette (iv) requires a weighing of the likely relevance of the requested material against the burden on the movant to produce the material. *See Selective Ins. Co. of Se. v. RLI Ins. Co., No. 5:12CV2126, 2017 U.S. Dist. LEXIS 49449, 2017 WL 1206036, at \* (N.D. Ohio Mar. 31, 2017)*; *United States v. Real Prop. Located at 36695 Clarita, Livonia, Mich. 48152, No. 15-12679, 2015 U.S. Dist. LEXIS 143429, 2015 WL 6437214, at \*1 (E.D. Mich. Oct. 22, 2015)* (citation omitted); *Sinclair v. Lauderdale County, Tenn., No. 2:14-CV-02908, 2015 U.S. Dist. LEXIS 37081, 2015 WL 1393423, at \*3 (W.D. Tenn. Mar. 24, 2015)*. Because the burden of complying with the proposed subpoenas falls upon the former employers, romanette (iv) does not apply to Queen's motion. Romanette (iii) applies to Queen's motion because the City seeks disclosure of "protected matter," *i.e.*, employment records in which Queen has a right of privacy. *See McBeath v. Tucson Tamale Co., No. CV-16-00462-TUC-DCB (BPV), 2017 U.S. Dist. LEXIS 113712, 2017 WL 3118779, at \*12 (D. Ariz. July 21, 2017)* (recognizing an individual has a right to privacy in his or her employment file); *Blotzer v. L-3 Commc'ns Corp., 287 F.R.D. 507, 509 (D. Ariz. 2012)*; *Barrington v. Mortage IT, Inc., No. 07-61304-CIV, 2007 U.S. Dist. LEXIS 90555, 2007 WL 4370647, at \*2 (S.D. Fla. Dec. 10, 2007)* (same). Therefore, Queen's motion will be construed **[\*11]** as brought pursuant to *Rule 45(d)(3)(A)(iii)*.

**HN5**[ ] While *Rule 45(d)(3)* does not identify irrelevance as a reason for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under *Rule 26*." *Medical Ctr. at Elizabeth Place, LLC v. Premier Health Partners, 294 F.R.D. 87, 92 (S.D. Ohio 2013)* (quoting *Hendricks v. Total Quality Logistics, 275 F.R.D. 251, 253 (S.D.Ohio 2011))*.

**HN6**[ ] *Rule 26(b)(1)* of the Federal Rules of Civil Procedure guides the evaluation of any discovery request. The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." *Fed. R. Civ. P. 26(b)(1)*. In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.; Advisory Committee Notes to the 2015 Amendment. The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

**HN7**[ ] *Rule 26(c)* affords the Court with the discretion to further limit the scope of discovery under certain circumstances. *See Levitin v. Nationwide Mut. Ins. Co., No. 2:12-CV-34, 2012 U.S. Dist. LEXIS 177738, 2012 WL 6552814, at \*3 (S.D. Ohio Dec. 14, 2012)*. Specifically, the Court may issue a protective order "forbidding **[\*12]** the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" to

prevent "annoyance, embarrassment, oppression, or undue burden or expense" where the movant has established "good cause" for such an order. *Fed.R.Civ.P. 26(c)(1)(A)* and *(D)*; Levitin, 2012 U.S. Dist. LEXIS 177738, 2012 WL 6552814, at *3; Nix v. Sword, 11 F. App'x 498, 500 (6th Cir.2001). "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." Nix, 11 F. App'x at 500 (internal quotation marks and citation omitted).

In sum, the Court must first consider whether the employment records that the City seeks to discover from Queen's former employers fall within the scope of *Rule 26(b)(1)*. Because the City is seeking this discovery, it has the burden of demonstrating that Queen's employment records are relevant to the claims or the defenses in this action. *See* Real Prop., 2015 U.S. Dist. LEXIS 143429, 2015 WL 6437214, at *1; Am. Elec. Power Co., Inc. v. United States, 191 F.R.D. 132, 136 (S.D. Ohio 1999). If the City satisfies this burden, then the burden shifts to Queen to demonstrate that "good cause" exists to issue a protective order, under *Rule 26(c)*, as to his employment records. *See* Black v. Kyle-Reno, No. 1:12-CV-503, 2014 U.S. Dist. LEXIS 22275, 2014 WL 667788, at *1 (S.D. Ohio Feb. 20, 2014) (citing Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011); Recycled Paper Greetings, Inc. v. Davis, No. 1:08-mc-13, 2008 U.S. Dist. LEXIS 10649, 2008 WL 440458, at *3 (N.D. Ohio Fed. 13, 2008)). In evaluating Queen's [*13] privacy objections, the Court must balance the City's need for material that is relevant within the scope of *Rule 26(b)(1)* against Queen's privacy right in his employment files. *See* McBeath, 2017 U.S. Dist. LEXIS 113712, 2017 WL 3118779, at *12; Blotzer, 287 F.R.D. at 509; Guitron v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 103072, 2011 WL 4345191, at *1 (N.D. Cal. Sept. 13, 2011).

The subpoenas address the time frame after Queen graduated from high school in May 2007 through September 2011 when the City hired him as a firefighter. Further, Queen worked for a relatively short period of time at each of the former employers (*see* DN 26-2). The Court finds that the four year temporal scope of these subpoenas is appropriate in light of the circumstances. *See* Stewart, 285 F.R.D. at 398 (imposing a temporal limit of 7 years).

Each subpoena duces tecum directs the recipient to produce: "a certified copy of the complete personnel file of Jeffrey Sean Queen, including but not limited to payroll records, employee reprimand (s), and/or disciplinary forms . . ." (DN 23-2 PageID # 112-17). The scope of the City's request is not as overbroad as the scope of the subpoenas in Henry v. Morgan's Hotel Grp., that made a blanket request for "[a]ll documents and communications . . . referring or relating to . . . " the plaintiff. No. 15-CV-1789 (ER)(JLC), 2016 U.S. Dist. LEXIS 8406, 2016 U.S. Dist. LEXIS 8406, at * (S.D. N.Y. Jan. 25, 2016). However, the City's request for "the complete personnel file" is [*14] too broad because "[p]ersonnel files may contain material that is both private and irrelevant to the claims and defenses in this action . . ." Blotzer, 287 F.R.D. at 509 (citation omitted).

Further, there is no merit to the City's argument that Queen has waived or should be estopped from challenging these subpoenas on relevance and privacy grounds merely because the City produced the entire employment records of individuals who supervised Queen. In reaching this conclusion, the Court notes that the City chose not to accept Queen's offer to limit the scope of his request to disciplinary and performance related records within those employment files (DN 26-5 PageID # 206). The Court will now address whether specific types of information within Queen's personnel files fall within the scope of *Rule 26(b)(1)*.

The Court agrees with the City that the records within each personnel file reflecting performance reviews, evaluations, complaints (by and about Queen), and reasons for Queen's departure or termination are relevant within the scope of *Rule 26(b)(1)*. *See* Levitin, 2012 U.S. Dist. LEXIS 177738, 2012 WL 6552814, at *3 (recognizing that **HN8**[⬆] district courts within the Sixth Circuit have concluded that these types of records from former employers are discoverable in employment discrimination cases); Stewart v. Orion Federal Credit Union, 285 F.R.D. 395, 398-99 (W.D. Tenn. 2012) (performance reviews, [*15] evaluations, and reasons for termination from prior employers is within the scope of permissible discovery).

The Court agrees with Queen that the payroll and benefits records from his former employers are not relevant within the scope of *Rule 26(b)(1)* to the issues of liability, damages, and mitigation. *See* Stewart, 285 F.R.D. at 399 (payroll records from prior employers are beyond the scope of permissible discovery). By contrast, the payroll and benefits records from Queen's employers following his constructive discharge in May 2016 would be discoverable because they bear on the issue of mitigation of damages. *See* Levitin, 2012 U.S.

Dist. LEXIS 177738, 2012 WL 6552814, at *3 (benefits records from subsequent current employers are discoverable).

With regard to the records within each personnel file reflecting performance reviews, evaluations, complaints (by and about Queen), and reasons for his departure or termination that are relevant within the scope of Rule 26(b)(1), the Court must now consider whether Queen has met his burden of demonstrating that "good cause" exists to issue a protective order, under Rule 26(c), forbidding their disclosure. While Queen has made general assertions about his privacy interests in his employment records, he has not articulated specific facts showing that a clearly defined **[*16]** and serious injury will result from the City obtaining this relevant material from his employment records. Moreover, the parties have entered into an agreed protective order (DN 18) to preserve the confidentiality of certain types of sensitive documents. The purpose of this protective order is to address such general privacy concerns, and Queen has identified no reasons why it is insufficient with regard to these records from each personnel file.

In sum, while Queen is not entitled to a motion to quash or a protective order, he is entitled to an order modifying the proposed subpoenas. See Fed. R. Civ. P. 45(d)(3)(A)(iii). Specifically, the document request shall be limited to the records within each of Queen's personnel files reflecting performance reviews, evaluations, complaints (by and about Queen), and reasons for his departure or termination, because those records fall within the scope of Rule 26(b)(1).

2. Queen's Motion to Quash as to His Tax Returns

HN9[↑] Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents in the "possession, custody, or control" of an opposing party, provided that the requested documents fall within the scope of Rule 26(b)(1). Fed. R. Civ. P. 34(a)(1); Kokosing Constr. Co., Inc. v. RLI Ins. Co., No. 2:07-CV-265, 2008 U.S. Dist. LEXIS 23836, 2008 WL 619359, at *1 (S.D. Ohio Mar. 3, 2008); Lehnert v. Ferris Faculty Association-MEA-NEA, 556 F. Supp. 316, 318 (W.D. Mich. 1983). A party may object to a document request **[*17]** under Rule 34(b)(2)(C) and may move for a protective order under Rule 26(c). See Westport Ins. Corp. v. Wilkes & McHugh, P.A., 264 F.R.D. 368, 370 (W.D. Tenn. 2009).

Here, Queen has moved to quash the City's Document Request No. 7. However, Queen has not identified, nor has the Court found, a procedural mechanism for quashing the City's Rule 34 document request. Therefore, the Court will construe Queen's motion as an objection and motion for a protective order under Rule 26(c).

Because the City is seeking this discovery, it has the burden of demonstrating that Queen's income tax returns are relevant to the claims or the defenses in this action. FDIC v. Ark-La-Tex Fin. Servs., LLC, No. 1:15 CV 2470, 2016 U.S. Dist. LEXIS 82444, 2016 WL 3460236, at * (N.D. Ohio June 24, 2016). If the City satisfies this burden, then the burden shifts to Queen to demonstrate that "good cause" exists to issue a protective order, under Rule 26(c), as to his tax returns. See Black, 2014 U.S. Dist. LEXIS 22275, 2014 WL 667788, at *1 (citing Hendricks, 275 F.R.D. at 253; Recycled Paper Greetings, Inc., 2008 U.S. Dist. LEXIS 10649, 2008 WL 440458, at *3).

HN10[↑] It is well-settled in the Sixth Circuit that tax returns are not privileged from disclosure. See DeMarco v. C & L Masonry, Inc., 891 F.2d 1236, 1240 (6th Cir.1989); Bricker v. R & A Pizza, Inc., No. 2:10-CV-278, 2011 U.S. Dist. LEXIS 55324, 2011 WL 1990558, at *2 (S.D. Ohio May 23, 2011); Kumar v. Hilton Hotels Corp., No. 08-2689 D/P, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *2 (W.D. Tenn. 2009). However, a judicial consensus exists that, as a matter of public policy, caution should be exercised in ordering the disclosure of tax returns. See Kumar, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *2; Credit Life Ins. Co. v. Uniworld Ins. Co., 94 F.R.D. 113, 120 (S.D. Ohio 1982).

Some district courts have applied a two-part standard that analyzes whether **[*18]** the returns are relevant within the meaning of Rule 26(b)(1) and, if so, whether the information is not otherwise available. See, e.g., Bricker, 2011 U.S. Dist. LEXIS 55324, 2011 WL 1990558, at *2-4; Smith v. Mpire Holdings, LLC, No. 3:08-0549, 2010 U.S. Dist. LEXIS 15426, 2010 WL 711797, at *1 (M.D. Tenn. Feb. 22, 2010). However, the Sixth Circuit has not adopted this two-part standard. See Kumar, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *3; Westbrook v. Charlie Sciara & Son Produce Co., Inc., No. 07-2657 Ma/P, 2008 U.S. Dist. LEXIS 24649, 2008 WL 839745, at *3 (W.D. Tenn. March 27, 2008).

Other district courts have held that the appropriate analysis is limited to whether the tax returns fall within the scope of Rule 26(b)(1). Sutherland v. City of Cincinnati, 2013 U.S. Dist. LEXIS 72556, 2013 WL

2255885, at *4 (S.D. Ohio May 22, 2013); *Kumar, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *3*; *Westbrook, 2008 U.S. Dist. LEXIS 24649, 2008 WL 839745, at *3*; *Credit Life Ins. Co., 94 F.R.D. at 120*. The Court concludes that the appropriate analysis is whether the tax returns are relevant to the claim or defense of any party. *Fed. R. Civ. P. 26(b)(1)*.

Courts typically find that tax returns fall within the scope of *Rule 26(b)(1)* where a party's income is in issue, as, for example, where a claim for lost wages has been asserted. *See, e.g.*, *Bricker, 2011 U.S. Dist. LEXIS 55324, 2011 WL 1990558, at *3*; *Reed v. Tokio Marine and Nichido Fire Ins. Co. Ltd., No. 3:09-CV-00676, 2010 U.S. Dist. LEXIS 1399, 2010 WL 420921, at *2 (W.D. La. Feb. 1, 2010)*; *Twilley v. International Bedding Corp., No. 1:09-CV-00033, 2009 U.S. Dist. LEXIS 83050, 2009 WL 2970407, at *1 (N.D. Ind. Sept. 10, 2009)*; *Burns v. St. Clair Housing Authority, No. 08-0258-DRH, 2008 U.S. Dist. LEXIS 90197, 2008 WL 4837614, at *1 (S.D. Ill. Nov. 6, 2008)*. In such cases information in tax returns may also be relevant to mitigation of damages. See, e.g., *Kumar, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *3*; *Jackson v. Unisys, Inc., No. 08-3298, 2009 U.S. Dist. LEXIS 121716, 2010 WL 10018, at *2 (E.D. Pa. Jan. 4, 2010)*.

Here, Document Request No. 7 seeks complete copies of Queen's "personal and business federal and state income tax returns, with all schedules, for the years 2011 **[*19]** through 2015 and all years thereafter" (DN 23-5 PageID # 144). However, Queen's claim for lost wages and benefits and his duty to mitigate did not arise until his constructive discharge in May 2016 (DN 1-2 PageID # 13). Consequently, Queen's tax returns for the years 2011 through 2015 do not contain information that is relevant to either his lost wages and benefits claim or his efforts to mitigate those damages. *Fed. R. Civ. P. 26(b)(1)*. Moreover, the City can review its own records to ascertain Queen's wages and benefits as a City firefighter in the years 2011 through 2015. In sum, Queen's tax returns for the years 2011 through 2015 are not discoverable because they do not fall within the scope of *Rule 26(b)(1)*.

Queen's tax returns for the years 2016 and thereafter may contain information regarding income that Queen earned through employment following his constructive discharge in May 2016. Such information would be relevant to his lost wages and benefits claim as well as his efforts to mitigate those damages. *Fed. R. Civ. P. 26(b)(1)*. In contrast to the W-2s and 1099s that Queen offers to provide, his tax returns provide a testimonial assurance regarding the accuracy of the information. Thus, Queen's tax returns for the years 2016 and thereafter **[*20]** are the best source of relevant information pertaining to his lost wages and benefits claim and his efforts to mitigate those damages. With regard to that relevant information, Queen has failed to demonstrate that "good cause" exists to issue a protective order under *Rule 26(c)*.

However, Queen purportedly files joint tax returns with his spouse that include information regarding her "income, investment income and losses, charitable donations, and other deductions, child care and other personal information" (DN 23-1 PageID # 167). Clearly, such information is not relevant to either Queen's lost wages and benefits claim or his efforts to mitigate those damages. *Fed. R. Civ. P. 26(b)(1)*. Thus, only parts of Queen's income tax returns for the years 2016 and thereafter will fall within the scope of *Rule 26(b)(1)*. Further, Queen's spouse has a privacy interest in her financial information that is not overcome by the City's need for discovery in this case. *See Kumar, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *3*; *Westbrook, 2008 U.S. Dist. LEXIS 24649, 2008 WL 839745, at *4*. The Court concludes that a redaction of financial information that relates solely to Queen's spouse will adequately protect her privacy interest. *See Kumar, 2009 U.S. Dist. LEXIS 101254, 2009 WL 3681837, at *3*; *Westbrook, 2008 U.S. Dist. LEXIS 24649, 2008 WL 839745, at *4*. Additionally, a redaction of financial information that pertains to investment income and losses, charitable donations, other **[*21]** deductions, and child care would be appropriate because such information is not relevant to either Queen's lost wages and benefits claim or his efforts to mitigate those damages. *Fed. R. Civ. P. 26(b)(1)*. In sum, Queen may redact such information from the tax returns prior to producing them to the City.

ORDER

**IT IS HEREBY ORDERED** that Queen's motion to quash the City's proposed subpoenas (DN 23) is **DENIED** in part and **GRANTED** in part.

**IT IS FURTHER ORDERED** that Queen's motion (DN 23) is **DENIED** to the extent it seeks to quash the proposed subpoenas.

**IT IS FURTHER ORDERED** that Queen's motion (DN 23) is **GRANTED** to the extent it seeks an order modifying the scope of the document request within the proposed subpoenas. Specifically, the document

request shall be limited to the records within each of Queen's personnel files reflecting performance reviews, evaluations, complaints (by and about Queen), and reasons for his departure or termination.

**IT IS FURTHER ORDERED** that Queen's objection to the City's *Rule 34* document request for his tax returns (DN 23) is **SUSTAINED** in part and **OVERRULED** in part.

**IT IS FURTHER ORDERED** that Queen's relevance objection is **SUSTAINED** as to his tax returns for the years 2011 through 2015 and those **[*22]** portions of his tax returns for the years 2016 and thereafter that set forth information regarding financial information that relates solely to Queen's spouse, investment income and losses, charitable donations, other deductions, and child care. Queen may redact such information from his tax returns for the years 2016 and thereafter before he produces them to the City.

**IT IS FURTHER ORDERED** that Queen's relevance objection is **OVERRULED** as to those portions of his tax returns for the years 2016 and thereafter that set forth information regarding income he has earned through employment.

**IT IS FURTHER ORDERED** that Queen's motion (DN 23) is **DENIED** to the extent it seeks a protective order as to his tax returns.

/s/ H. Brent Brennenstuhl

**H. Brent Brennenstuhl**

**United States Magistrate Judge**

September 28, 2017

**End of Document**