UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE LEE,

               Plaintiffs,                        Case No. 2:22-cv-11145
                                             District Judge Paul D. Borman
                                           Magistrate Judge Anthony P. Patti

v.

EUSA PHARMA US LLC and
RECORDATI RARE DISEASES, INC.,

               Defendants.

_____/

## <u>ORDER AFTER IN CAMERA REVIEW</u>

### I.    Procedural and Factual Background

On November 10, 2023, Plaintiff moved to compel certain discovery from Defendant. (ECF No. 42.) That motion asked the Court to compel answers to Plaintiff's Interrogatory No. 9, regarding actions taken with respect to Plaintiff's grievance (*id.*, PageID.512-517), clarifying in the joint statement of unresolved issues that, "[t]here is also a corresponding request for production[,]" (ECF No. 49, PageID.821). The Court held a hearing on December 13, 2023, deciding most of

the issues Plaintiff raised in the motion, but retaining under advisement the issue of

documents related to a pre-lawsuit investigation conducted by the Jackson Lewis

law firm, over which Defendant asserts attorney-client privilege and work product

doctrine protection.  Specifically, the resulting Order states:

> Taking into consideration Affirmative Defense No. 8 (ECF No. 22, PageID.285), several of Plaintiff's attachments to his motion (ECF Nos. 42-4, 42-5, 42-6, 42-7), and Plaintiff's submission of a May 23, 2022 letter from Attorneys Patrice C. Dixon and Bert H. Ware to Plaintiff's counsel (ECF No. 50), the Court **TAKES UNDER ADVISEMENT** its ruling as to RFP No. 11, namely whether Defendant must produce copies of any interviews or recordings thereof.  No later than **Wednesday, December 20, 2023**, Defendant **SHALL email Judge Patti's Case Manager** to provide the Court with copies of the letter of engagement between EUSA Pharma and Jackson Lewis PC, as well as the resulting report, for in camera review, after which the Court will issue its ruling on RFP No. 11. Meanwhile, Defendant **SHALL** answer Interrogatory No. 9, separately answering Subparts 9(a)-9(h), under oath and must identify each of the approximately twelve (12) interviewees, so that, in the event the Court concludes related materials need not be produced in response to RFP No. 11, Plaintiff at least will know who was interviewed. And, <u>although not mentioned from the bench, Plaintiff is given leave under Fed. R. Civ. P. 30(a)(2)(A)(i) to depose all such interviewees, even if the total number of witnesses deposed exceeds ten in number, so long as the total number of depositions taken by Plaintiff does not exceed fifteen.</u> Further, regardless of what the Court concludes as to RFP No. 11, Defendant **SHALL** produce any statements that were made by a witness under oath (or by way of declaration under penalty of perjury), whether written or recorded.

 (ECF No. 51, PageID.828-829 (emphases in original).)

Subsequently, on December 27, 2023 and December 28, 2023, the Court

issued additional text orders, each requiring Defendant to produce further

information.  In compliance with these orders, Defendant has now clarified that

designations at the top of each page of the engagement letter and investigative

report provided to the Court for its *in camera* inspection – indicating that they were

"privileged and confidential attorney-client communication attorney work product"

and (with respect to the engagement letter only) "prepared in anticipation of future

litigation" – have appeared on these documents since their creation, *i.e.*, they were

not added as the documents were being prepared for review by the Court.  (ECF

No. 58.)  Defendant has also verified that "neither Bert Ware nor Patrice Dickson

[sic] [the attorneys who conducted the investigation and prepared the report] are

referred to in Defendant's initial disclosures."  (ECF No. 59.)  The Court has now

completed its *in camera* inspection, reaches the following conclusions, and makes

the following rulings.

## II.    The Jackson Lewis Firm

Preliminarily, the Court notes that the focus of Plaintiff's motion was

obtaining answers to Interrogatory No. 9, which the Court in fact ordered (*see* ECF

No. 51, PageID.829), without discussion of the corollary Request to Produce No.

11 until his brief reference to it in the Joint Statement (*see* ECF No. 49,

PageID.820).  Oral argument further clarified the focus of the requested ruling,

which the Court identified as the narrow issue of "whether Defendant must

produce copies of any interviews or recordings thereof." (ECF No. 51,

PageID.828.)  Informed by its *in camera* review of the Jackson Lewis engagement letter and the resulting investigative report, the Court **SUSTAINS in large part** Defendant's objection to producing documents relating to the investigation, based on the attorney-client privilege and work product doctrine.

### A.      Defendant's Engagement of Jackson Lewis

The Court finds that Defendant's retention and engagement of Jackson Lewis, an outside law firm, to conduct an "impartial workplace investigation concerning allegations raised by Kevin Davis and George Lee" was done in anticipation of litigation.  On February 24, 2022, Plaintiff emailed a "Statement of Grievance" to Defendant, in which he, *inter alia*, questioned the evaluation of his performance, described his work environment as "toxic[,]" stated that he "felt bullied, harassed and my job status repeatedly threatened[,]" and felt that he was "singled out and treated negatively" and also that his "opinion is devalued and ignored." (ECF No. 42-4, PageID.559.)  Plaintiff further rhetorically queried, "[i]sn't it interesting this is also happening to the only other African American KAM in our sales force who is also 100% to goal?" (*Id*.)  Of particular significance is Plaintiff's penultimate line before closing:  "At this point, it is my hope we can resolve this internally, without retaliation, but *I am not adverse to involving outside counsel*." (*Id*. (emphasis added).)  This threat to bring in outside counsel clearly elevated the situation to one in which litigation could reasonably be

anticipated, and, in fact, was reasonably anticipated.  In its immediate response to the grievance, Defendant communicated that it was "in the process of identifying an outside investigator to investigate your concerns[.]"  (*Id.*, PageID.558.)

By March 4, 2022, roughly ten days later, Defendant retained Jackson Lewis (now its litigation counsel of record) as its outside counsel to conduct the above-referenced investigation.  The services covered by that engagement were, per the engagement letter reviewed by the Court, "being provided to enable EUSA's in-house and outside counsel to render legal advice to the company with respect to the subject matter of the Investigation."  The scope of the engagement included making recommendations for eliminating and/or mitigating risks associated with certain employment practices, if they existed.  Jackson Lewis's services are referred to in various places as "representation."  Communications under the engagement were to be confidential and included certain advice regarding preservation of evidence and litigation holds.  Tellingly, five days after the engagement, on March 8, 2022, Defendant sent an email to Plaintiff, clearly in anticipation of litigation, titled "**INVESTIGATION/LITIGATION HOLD NOTICE AND DIRECTIVE TO PRESERVE PAPER RECORDS AND ELECTRONIC DATA**[,]" specifically directing Plaintiff to "take the affirmative steps described in this Notice to preserve both hard-copy paper documents and ESI

relevant to this investigation and that are in your custody or control." (ECF No.

42-5 (emphasis and capitalization in the original).)

### B. Investigation and Report

Jackson Lewis's report was not completed until May 13, 2022, well after the

assertion of a litigation hold. In the report itself, Jackson Lewis repeatedly renders

legal opinions and reveals attorneys' thought processes, making findings,

conclusions and determinative statements which are evaluative of evidence,

inferences, and burdens of proof. The report contains no verbatim transcripts of

full witness interviews, only limited, selective quotes from Lee and Davis, and

compiled summaries of various interviews, filtered through the thought processes

of the attorneys who authored it. *See American Standard Inc. v. Bendix Corp.*, 71

F.R.D. 443, 446 (W.D. Mo. 1976) (even transcripts of plaintiff's counsel's

interviews of antitrust defendant's employees fell within classic definition of work

product). As mentioned above, neither of the attorneys who authored the report are

listed as sources of discoverable information in Defendant's initial disclosures (*see*

ECF No. 59), nor are they listed on Defendant's July 19, 2023 witness list (ECF

No. 36).

Plaintiff points out that the attorneys at Jackson Lewis who conducted the

investigation went out of their way to emphasize the independence and impartiality

of their investigation, even sending Plaintiff's counsel a May 23, 2022 letter stating

that the law firm had been engaged "in this matter solely to conduct an ***impartial*** workplace investigation into Mr. Davis and Mr. Lee's allegations concerning their treatment in the workplace[,]" and further representing that "[n]either Patrice nor I represent EUSA Pharma in any capacity beyond that specific engagement." (ECF No. 50 (emphasis in original).) As part of that investigation, Plaintiff was interviewed by Jackson Lewis attorneys with his own counsel present, with the report noting that Plaintiff's counsel interjected in the questioning of witness Kevin Davis, his other client who is apparently litigating against Defendant in the State of New Jersey. (*See* ECF No. 42, PageID.510 n.1, 517; ECF No. 47, PageID.712.)[1]

## III.   Analysis

To the extent that Plaintiff requests copies of any recordings or *verbatim* transcripts of *his own* interview, his request is **GRANTED**, because Defendant can hardly claim that the questions and answers which were verbalized in the presence of its instant adversary and his counsel are still subject to attorney-client privilege or work product doctrine. Additionally, it would be inherently unfair for Defendant to utilize this information for purposes of impeaching its adversary without Plaintiff being able to review his own prior statements. Accordingly, these

---

[1] From a public records search, this would appear to be pending in the Superior Court of New Jersey, Law Division: Mercer County, Docket No. MER-L-001387-22.

must be turned over to Plaintiff within **one week** of this order, if they exist and have not been given to counsel already.[2]

However, Plaintiff's suggestion that Defendant has waived these protections with respect to *all* interviews conducted as part of Jackson Lewis's investigation is not well taken.  The suggestion is, perhaps, that Plaintiff was lured into giving a pre-suit interview conducted by the law firm that would ultimately oppose him in litigation, because he was tricked into believing that the interviewers were and would always be "neutrals" between him and his former employer.  While it may be true that Jackson Lewis overemphasized the "independence" and "impartiality" of its investigation, Plaintiff – admittedly – had the benefit of his own counsel's presence when he was interviewed (and videotaped, with a copy provided to Plaintiff and his counsel).  (ECF No. 42, PageID.517.)   Moreover, Plaintiff places too much value on this terminology.  In the context of a workplace, employment related investigation, and with the benefit of having conducted an *in camera* review of the engagement letter and resulting report, the Court recognizes that the "independence" and "impartiality" of Jackson Lewis's investigation refers to its goal of gathering facts in order to give *candid legal advice* to the employer, as

_____

[2] Th Court recognizes that Plaintiff's counsel represents both Kevin Davis and George Lee; however, only the latter is a party to this action, and, for purposes of *this lawsuit*, Kevin Davis is treated as a nonparty, internal employee interviewee. Recordings or verbatim transcripts of Davis's interview should be obtained through the litigation being pursued on his behalf.

opposed to merely circling the wagons to defend against an inevitable lawsuit.
Even with that goal of candor, there is little doubt in the Court's mind that the
engagement was undertaken by outside counsel in anticipation of litigation and
with the purpose of "enable[ing] EUSA's in-house and outside counsel to render
legal advice" to Defendant. Indeed, in its March 21, 2022 email communication
with Plaintiff − who was then also an employee − Defendant emphasized the need
for "***absolute candor***" and confidentiality in the Jackson Lewis workplace
investigation. (ECF No. 42-6 (emphasis in original).) The fact that an
investigation may stem from a mixed purpose engagement does not convert the
investigation into a waiver of attorney-client privilege or work product protection.
*See Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 232 (E.D.
N.Y. 2019) ("It is therefore well-settled that 'conducting an investigation for
business purposes on the one hand and in anticipation of litigation on the other are
not mutually exclusive . . . .'") (quoting *In re Symbol Techs., Inc. Sec. Litig.*, No.
05-cv-3923, 2016 WL 8377036 at *9 (E.D.N.Y. Sept. 30, 2016)).

In holding that corporations are entitled to assert both the attorney-client
privilege and the work product doctrine, the Supreme Court in *Upjohn v. United
States*, 449 U.S. 383 (1981), stated: "[T]he [attorney-client] privilege exists to
protect not only those who can act on it but also the giving of information to the
lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at

390.  The engagement letter reviewed by this Court clearly demonstrates that Jackson Lewis's services fit squarely within these parameters, as the services were "being provided to enable EUSA's in-house and outside counsel *to render legal advice to the company* with respect to the subject matter of the Investigation." (Emphasis added.)

### A.     Attorney-Client Privilege

As the D.C. Circuit held in *In re Kellogg Brown & Root, Inc.,* 756 F.3d 754 (D.C. Cir. 2014) (Kavanaugh, J.):

> [N]othing in *Upjohn* requires a company to use magic words to its employees in order to gain the benefit of the [attorney client] privilege for an internal investigation. *** So long as obtaining or providing legal advice was *one of the significant purposes* of the internal investigation, the attorney privilege applies, *even if there were also other purposes* for the investigation.... *** Under the District Court's approach, the attorney-client privilege apparently would not apply unless the sole purpose of the communication was to obtain or provide legal advice. That is not the law. We are aware of no Supreme Court or court of appeals decision that has adopted a test of this kind in this context. *** In the context of an organization's internal investigation, if one of the *significant purposes* of the internal investigation was to obtain or provide legal advice, the privilege will apply.

*In re Kellogg*, 756 F.3d at 758-760 (emphases added) (quoted in pertinent part and internal page references omitted).

Likewise, in a local case which also involved an internal investigation conducted by attorneys in the employment discrimination context, this Court adopted the same analysis.  *See Edwards v. Scripps Media*, Case No. 18-10735,

2019 WL 2448654, at *1-2 (E.D. Mich. Jun. 10, 2019) (Borman, J.) (quoting the

above-referenced language from *Kellogg*).  In the instant matter, it is clear to the

Court that "one of the significant purposes of the internal investigation was to

obtain or provide legal advice," *In re Kellogg*, 756 F.3d at 760; thus, the attorney-

client privilege applies.  It is also clear to the Court that, in communications

between Jackson Lewis and Defendant, the purpose of rendering legal advice was

predominant, not peripheral.  *See Carhartt, Inc. v. Innovative Textiles*, *Inc*., 333

F.R.D. 113 (E.D. Mich. 2019).[3]

### B.    Attorney Work Product Doctrine

#### 1.    Work product protection applies here.

Furthermore, the thought processes of the Jackson Lewis attorneys who

conducted the investigation − who are from the same law firm that now represents

Defendant in this litigation − including their evaluation and characterization of

evidence, is inextricable from the materials submitted for *in camera* review.  The

Sixth Circuit applies a two-part inquiry to determine whether materials are

protected as work product in anticipation of litigation:  "(1) whether a document

was created because of a party's subjective anticipation of litigation, as contrasted

---

[3] *See also, Wirt v. Ticona Polymers, Inc*., No. 04-73753, 2005 WL 8154956 (E.D. Mich. Jan. 28, 2005) (Whalen, M.J.) (a document may still be privileged if counsel was only a "cc" recipient); *Melchior v. Hilite Int'l, Inc*., No. 13-50177, 2013 WL 2238754, at *2 (E.D. Mich. May 21, 2013) (Cohn, J.) (privilege attaches to communications between company employees and counsel).

with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Informed by its *in camera* review, the Court finds that the investigative report and any interview notes or summaries from this investigation would have been created because of Defendant's subjective anticipation of litigation, rather than just an ordinary business purpose, and further finds that Defendant's subjective anticipation of litigation was objectively reasonable.[4] Moreover, even attorney interview notes of fact witnesses (if any exist), which are inevitably funnelled through the attorney-interviewers' ears, minds, fingers and/or voices (if dictated), are also protected as work product and, thus, not discoverable. *See In re General Motors LLC Ignition Switch Lit.*, 80 F.Supp.3d 521, 532 (S.D.N.Y. 2015) ("[i]nterview notes and memoranda produced in the course of . . . internal investigations have long been considered classic attorney work product.") As the Supreme Court has explained: "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn*, 449 U.S. at

---

[4] Plaintiff's reliance on Judge Morris's post *in camera* inspection opinion in *Martin v. Saginaw Co. Road Commission*, Case No. 20-12996 (Aug. 29, 2022) (ECF No. 54 therein) is misplaced. For starters, *in camera* inspections and the conclusions to be drawn from them are obviously fact and case specific. But Judge Morris's opinion is distinct in another key component: It provides no application of the work product doctrine, solely analyzing attorney-client privilege.

399 (internal citation omitted).  *See also United States v. One Tract of Real Prop. Together With all Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 427 (6th Cir. 1996); 3 *Moore's Federal Practice* § 26.70, Subsection 2(a) ("Thus, while the facts themselves are not privileged, a chart or other compilation of facts may be protected as work product.").[5]  Indeed, even if, *arguendo*, Jackson Lewis attorneys Ware and Dixon had been acting as mere agents for Defendant's in-house or outside counsel in the course of their investigation, as opposed to functioning as lawyers themselves, the work product doctrine protects "material prepared by agents for the attorney as well as those prepared by the attorney himself."  *United States v. Nobles*, 422 U.S. 225, 238-239 (1975).  This is so, at least in part, because of the reality "that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial."  *Nobles*, 422 U.S. at 238.

---

[5] Citing *Ryall v. Appleton Elec. Co.*, 153 F.R.D. 660, 662-663 (D. Colo. 1994); *Com. of Mass. v. First Nat. Supermarkets, Inc.*, 112 F.R.D. 149, 151 (D. Mass. 1986); *Am. Standard, Inc. v. Bendix Corp.*, 71 F.R.D. 443, 446 (W.D. Mo. 1976); and, *Trustees of Plumbers & Steamfitters Loc. Union No. 43 Health & Welfare Fund v. Crawford*, 573 F. Supp. 2d 1023, 1028 n.3 (E.D. Tenn. 2008) (citing *Schipp v. Gen. Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006)) (notes taken by attorneys during interviews are typically covered by work product doctrine).

## 2. Plaintiff could obtain the information by other means.

The Court recognizes that the work product doctrine is not sacrosanct. In the seminal case on the subject, *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme Court recognized the competing interests at play in litigation. As the court explained:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 510–11 (*citing Hickman v. Taylor*, 153 F.2d 212, 223 (3d Cir. 1945)). On the other hand, the Court made clear: "We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases." (*Id.*, at 511.) Nonetheless, the burden to demonstrate that documents should be produced

in discovery *despite* their status as attorney work product "rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order."  (*Id.*, at 512.)

In the instant matter, Plaintiff has made no showing that he is unable to obtain the information he seeks by other means.  Indeed, the Court's prior order made reasonable provision for evening the playing field.  Specifically, the Court required Defendant to "produce any statements that were made by a witness under oath (or by way of declaration under penalty of perjury), whether written or recorded."  (ECF No. 51, PageID.829.)  The Court also ordered Defendant to answer Interrogatory No. 9 and to "identify each of the approximately twelve (12) interviewees, so that … Plaintiff at least will know who was interviewed."  (*Id.*)  Further, *sua sponte*, the Court gave leave for Plaintiff to "depose all such interviewees, even if the total number of witnesses deposed exceeds ten in number, so long as the total number of depositions taken by Plaintiff does not exceed fifteen."  (*Id.* (emphasis in original).)  Thus, Plaintiff should now know who all the interviewees were, and he may find out what they have to say through formal discovery (or perhaps through informal interviews, subject to the witness' consent and any ethical rules that may apply).

### C.   Waiver

The Court is also cognizant of the fact that the attorney-client privilege and work product protection can be waived.  The Court sees no evidence of a waiver at this juncture.  In an attempt to leave no stone unturned, the Court issued two text-only orders, respectively on December 27, 2023 and December 28, 2023.  These orders, as described above, sought to ascertain whether the engagement letter and resulting investigative report were classified as confidential, protected and privileged from the beginning, or only as an afterthought, and whether Defendant had proffered attorneys Ware and Dixon as witnesses with discoverable information in Defendant's initial disclosures.  The Court is satisfied that these documents have always been classified as protected and that Ware and Dixon have not been proffered as witnesses with discoverable information in this case in either Defendant's initial disclosures or its witness list.  (ECF Nos. 36, 59.)

Plaintiff suggests that Defendant may have waived attorney-client privilege and/or work product doctrine protection for the documents in question in its eighth affirmative defense, which states: "Plaintiff's allegations are barred in whole or in part because EUSA exercised reasonable care to prevent and promptly correct any alleged discriminatory/harassing behavior, and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by EUSA to avoid harm otherwise."  (ECF No. 42, PageID.516; ECF No. 22, PageID.285 ¶ 8.)

The Court is satisfied that this affirmative defense, in and of itself, does not

constitute a waiver.  The affirmative defense makes no mention of an investigation

by Jackson Lewis or any other attorney, nor does it suggest an "advice of counsel"

defense, as the Court often sees in patent infringement litigation.  Defendant has

made no suggestion that the people conducting the investigation will be proffered

as witnesses, that it intends to rely upon this investigation in support of the

affirmative defense, or that it is intending to rely upon the attorney notes or

attorney summaries of witness interviews for that purpose.  *See Zimmerman v.*

*Wells Fargo Advisors, LLC*, No. 15-CV-14311, 2016 WL 11601249, at \*4 (E.D.

Mich. Feb. 8, 2016) (Morris, MJ) ("Testimonial use of material that would

otherwise be cloaked with work-product protection may waive that protection.  It

would indeed be perverse to permit an attorney to 'offer testimony based on

documents that he or she simultaneously claims are protected by the work product

privilege,' because doing so permits the attorney to use the privileged materials as

both sword and shield, revealing only those portions of the work-product which

benefit the attorney's client.") (quoting *Kallas v. Carnival Corp*., No. 06-20115-

CIV, 2008 WL 2222152 (S.D. Fla. May 27, 2008)).  To the contrary, Defendant

has steadfastly resisted production, has claimed privilege and work product

protection, has not identified Ware or Dixon in its initial disclosures, and has not

named them on its witness list (*see* ECF No. 36).  While the Court agrees with

Plaintiff that Defendant cannot "'have its cake and eat it too'" (ECF No. 42,

PageID.516), Plaintiff has not shown the Court that Defendant seeks to so indulge.

(*See, e.g.*, ECF No. 42-2.)

Of course, should Defendant change course and seek to rely upon the

"advice of counsel," the substance of the investigative report, or the testimony of

Ware and Dixon *in support of its affirmative defense*, the protections recognized in

this Order could be waived.  *See Harding v. Dana Transport, Inc*., 914 F. Supp.

1084, 1096 (D. N.J. 1996) (waiver where an employer relied upon the reasonable

investigation by its attorney as a defense to employer liability for a hostile work

environment sexual discrimination case arising under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and state law); 6 *Moore's Federal*

*Practice* § 26.70[6][c] at 26-226 (3d ed. 1997) ("A party also impliedly waives

work product protection if it places the substance of the documents for which the

protection is claimed at issue.  Similarly, if a party uses the substance of the

documents in testimony, any work product protection is waived.") (internal

citations omitted).  Thus, while Defendant could waive the asserted protections by

placing the substance of the investigation or its resulting documents at issue,

Plaintiff has not shown how Defendant has impliedly or explicitly done so, through

its pleadings or otherwise.  In a similar vein, should Defendant move for

dispositive relief on the basis of Jackson Lewis's investigation or conclusions, as

detailed in its report, Defendant would severely risk waiving the protections it has so diligently sought to uphold here.  *See In re Perringo*, 128 F.3d 430, 444-445 (6th Cir.) (Moore, J., concurring in part, dissenting in part).  In sum, Defendant's eighth affirmative defense does not go as far toward waiver as Plaintiff would advocate, as it does not directly refer to the investigation and does not suggest that counsel's investigation or advice would deflect responsibility for the employment decision. *See, e.g., Wilson v. Stroh Companies, Inc.*, 952 F.2d 942, 946 (6th Cir. 1992) (*overruled on other grounds*).  *See also Volpe v. US Airways*, 184 F.R.D. 672, 673 (M.D. Fla. 1998) (privilege deemed waived where defendant's affirmative defense and its interrogatory answers demonstrate that it "intends to rely upon the internal investigation and subsequent remedial action to avoid liability").

## IV.    Summary of Rulings

Applying the above reasoning to the information at issue here, the Court rules as follows with respect to specific items:

- <u>Jackson Lewis's retention letter</u>:  Defendant need not produce, unless waiver occurs, as described above.

- <u>Jackson Lewis's investigative report</u>:  Defendant need not produce, unless waiver occurs, as described above.

- <u>Plaintiff's own interview recording or verbatim transcript</u>:  Defendant must produce, if it has not done so already.

- <u>Other witness interview recordings or transcripts</u>:  Unless Defendant has been ordered elsewhere to produce information related to Kevin Davis's interview, Defendant need not produce witness interview recordings or transcripts unless Defendant intends to confront witnesses with these recordings/transcripts for purposes of cross-examination or refreshing recollection.

- <u>Interviewee affidavits or declarations under oath/subject to perjury</u> (*see* 28 U.S.C. § 1746), *i.e.*, provides actual *testimony*:  Was previously ordered.

- <u>Statements which are actually signed by a witness or handwritten by witness himself/herself</u> (as opposed to attorney notes, summaries, or compilations):  If signed or handwritten witness statements exist, and if Defendant has a legitimate basis for withholding such statements and does not intend to use such statements for purposes of cross-examination or refreshing recollection, then Defendant must provide a privilege log, identifying the author, recipient, subject matter, date and privileged basis for withholding them; otherwise, they must be produced.

- <u>Attorney interview notes, compilations or summaries</u>:  Defendant need not produce.

**IT IS SO ORDERED.**[6]

Dated:  January 23, 2024

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

---

[6] The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).